# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN MERRELL, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> 1st LAKE PROPERTIES, INC. <br><br> Defendant. | § <br> § <br> § <br> § <br> §    CASE NO. 2:23-CV-01450 <br> § <br> § <br> § <br> § <br> § |

## NOTICE OF REMOVAL

Defendant 1st Lake Properties, Inc. ("1st Lake"), by and through undersigned counsel, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, hereby provides notice of removal of this action from the 24th Judicial District Court for the Parish of Jefferson to the United States District Court for the Eastern District of Louisiana. In support of removal, Defendant states as follows:

## BACKGROUND AND TIMELINESS OF REMOVAL

1. On March 22, 2023, Plaintiff filed a Class Action Petition and Demand for Jury Trial (the "Complaint") on behalf of himself and purportedly on behalf of all others similarly situated against 1st Lake in the 24th Judicial District Court for the Parish of Louisiana, in an action titled *Kevin Merrell v. 1st Lake Properties, Inc.,* Case No. 838-959 (the "State Court Action").

2. On March 31, 2023, Defendant was served with a copy of the Summons and Complaint. Pursuant to 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed and served in the State Court Action are attached to this Notice as **Exhibit A**.

3. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) as the Notice is being filed within 30 days of Defendant's receipt of a copy of the Summons and Complaint in the State Court Action.

## VENUE

4. This Court is in the judicial district and division embracing the place where the state court action was brought and is pending. Specifically, the United States District Court for the Eastern District of Louisiana embraces the 24th Judicial District Court for the Parish of Jefferson. Thus, this Court is the district court to which this case is properly removed. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

## GROUNDS FOR REMOVAL

5. This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

6. CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 274 n.13 (5th Cir. 2009) (quoting 28 U.S.C. § 1332(d)(1)(B)).

7. Plaintiff brings this action as a "class action" and seek class certification under Louisiana law pursuant to La. Code Civ. Proc. Ann. art. 591. Compl., ¶ 70. Because Louisiana's Rule is a "similar State statute . . . authorizing an action be brought by 1 or more representative as a class action," the State Court Action is a class action for CAFA purposes. *See In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (finding La. Code Civ. Proc. art. 591(A) is "a state statute that authorizes class actions to be brought by a person" because it "permits members of a class to sue or be sued as representative parties.").

**CAFA JURISDICTION**

8. "CAFA contains a basic jurisdictional test for removal, which requires the removing defendant to prove minimal diversity and an aggregated amount in controversy of $5,000,000 or more." *Preston v. Tenet Healthsystem Memorial Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007). For CAFA jurisdiction to exist, the putative class must also consist of at least 100 members. 28 U.S.C. § 1332(d)(5)(B). Minimal diversity for purposes of CAFA requires only that one plaintiff be diverse from one defendant. *DeHart v. BP Am., Inc.*, No. 09 CV 0626, 2010 WL 231744, at *7 (W.D. La. Jan. 14, 2010). Moreover, under CAFA, "a single defendant may remove a class action that meets these three requirements, even over the objections of other defendants." *Id.*

9. As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), 1st Lake may remove the State Court Action to federal court under CAFA because: "(1) the case is a class action brought on behalf of at least one hundred putative class members; (2) the amount in controversy exceeds $5,000,000, exclusive of interests and costs; and (3) any member of a class of plaintiffs is a citizen of a state different from any defendant." *Escoe v. State Farm Fire & Cas. Co.*, No. CIV.A.07-1123, 2007 WL 1207231, at *1 (E.D. La. Apr. 23, 2007) (citing 28 U.S.C. § 1332(d)).

**SIZE OF THE PUTATIVE CLASS**

10. CAFA provides that the district courts shall not have jurisdiction over actions "where the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5). Plaintiff seeks to represent "[a]ll individuals residing in the Louisiana whose PII was compromised in the Data Breach discovered by 1st Lake Properties, Inc. in December 2021." Compl., ¶ 67.

11. Plaintiff asserts that "there are thousands of persons who had their PII compromised by the 1st Lake Properties' data breach." Compl., ¶ 71. Defendant mailed notification letters to approximately 29,098 impacted persons. Thus, per the allegations in the Complaint, the putative class size exceeds the CAFA jurisdictional threshold.

## "MINIMAL DIVERSITY" OF CITIZENSHIP EXISTS

12. Pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014).

13. <u>Defendant's Citizenship</u>. A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518 (5th Cir. 2015); *see also* 28 U.S.C. § 1332(c). A corporation's "principal place of business is 'where the corporation's high-level officers direct, control, and coordinate the corporation's activities.'" *Id.* (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)). Defendant is a Louisiana corporation with its principal place of business in Louisiana and is therefore a Louisiana citizen.

14. <u>Plaintiff's and the Putative Class Members' Citizenship</u>. For diversity purposes, "the term citizenship is synonymous with domicile." *Martin v. Lafon Nursing Facility of the Holy Fam., Inc.*, 548 F. Supp. 2d 268, 273 (E.D. La. 2008). "Domicile requires residence in the state and an intent to remain in the state." *Preston v. Tenet Healthcare Indians v. Holyfield*, 485 F.3d 793, 798 (5th Cir. 2007) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). As alleged in the Complaint, Plaintiff is "domiciled in the Parish of Jefferson, State of

Louisiana." Compl., ¶ 1. Accordingly, absent evidence to the contrary, Plaintiff is a citizen of Louisiana for diversity jurisdiction purposes.

15. Although Plaintiff alleges that he is a citizen of Louisiana, the citizenship of the putative class remains unknowable at this time. Plaintiff seeks to represent a class defined as "[a]ll individuals residing in the Louisiana whose PII was compromised in the Data Breach discovered by 1st Lake Properties, Inc. in December 2021." *Id.* at ¶ 67. In an apparent effort to prevent this Court's exercise of its CAFA jurisdiction, Plaintiff also states the conclusory and unsupported allegation that "[t]here is no federal subject matter jurisdiction over this action because there is not complete diversity between the parties." *Id.* at ¶ 4. But this allegation focuses on diversity jurisdiction under 28 U.S.C. § 1332(a) and not the CAFA requirement under 28 U.S.C. § 1332(d) for only "minimal diversity." And while Plaintiff may be a citizen of Louisiana for pleading purposes, he seeks to represent *residents* of Louisiana, and both common sense and information related to the individuals notified in December 2021 support the existence of minimal diversity for purposes of CAFA.

16. **First,** the information in 1st Lake's possession indicates that at least one class member is likely a citizen of another state. 1st Lake mailed around 29,098 notices to impacted persons across the entirety of the United States, with over 3,700 of the 29,098 going to the neighboring states of Texas, Mississippi, Alabama, Georgia, and Florida. Furthermore, the impacted persons include former tenants like the Plaintiff himself, who was only a tenant from 2017 to 2018, and prospective tenants who filled out an application but never moved into a 1st Lakes apartment. Thus, evidence exists that, at the time of removal, at least one of the notified addressees includes a non-Louisiana citizen.

17. **Second**, Plaintiff provided no temporal limitation on the "individuals residing in Louisiana" that are included in his class definition. *See Arbuckle Mt. Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 343 (5th Cir. 2016) (exercising CAFA jurisdiction because the class definition did not clearly limit the membership – "owners" – to current, Texas citizens); *see also, e.g., Anderson v. Davis Wright Tremain LLP*, 2021 WL 7184127, *11–13 (D. Ore. July 14, 2021) (In denying motion to remand, court declined to read a temporal limitation into class definition which stated "Class Members are . . . Oregon citizen[s]" and noted that the plaintiff's definition lacked a temporal term like "currently".); *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880 (9th Cir. 2013) (denying remand because class membership not sufficiently limited to defeat minimal diversity at time of removal). As identified, Plaintiff's class includes residents of Louisiana regardless of whether those persons are current or former residents of the state. And considering the underlying incident occurred in 2021 and notifications were mailed shortly thereafter, it is likely that in the span of over one year, a tenant moved from a temporary residence in Louisiana to another state. Most of 1st Lake tenants sign a lease of only 12-18 months, which does not reveal an intent to remain in Louisiana for an extended period of time. In fact, approximately 4,594 notification letters were returned as undeliverable. No party can confirm the citizenship of any of those individuals and 1st Lake does not have any evidence of current Louisiana residence.

18. This is especially true considering Defendant is a developer and property manager interacting with "persons travelling through the state, persons transported into the state, or persons who were once domiciled in the state but changed their domicile prior to the Petition's filing." *Stewert v. Ruston Louisiana Hospital Co., LLC*, No. 3:14-CV-00083-RGJ, 2014 WL 1246139, at *7 (W.D. La. Mar. 25, 2014), *aff'd*, No. CIV.A. 3:14-0083, 2014 WL 4678606 (W.D.

La. Sept. 19, 2014); *see* Merriam-Webster, Tenant, "one who has the occupation or *temporary possession* of and or tenements of another," https://www.merriam-webster.com/dictionary/tenant, last accessed 042623 (emphasis added).

19. Residents of Louisiana "whose PII was compromised in the Data Breach discovered by 1st Lake Properties, Inc. in December 2021," but moved to another state prior to removal are likely members of the putative class but citizens of their new states for purposes of minimal diversity under CAFA. Compl., ¶ 67. There is no way of knowing without asking each individual. Similarly, because 1st Lake manages "over 9,500 apartment units in greater New Orleans," potential class members may be citizens of other states staying in a Louisiana apartment temporarily without the requisite intent to remain. *Id.* at ¶ 8. Under CAFA, if minimal diversity exists at the time of removal, federal jurisdiction cannot be divested. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 426 (5th Cir. 2014) (referring to the time-of-removal rule as "hornbook law"); *see also* Senate Report, S. Rep. 109-14, S. Rep. No. 14, 109th Cong. 1st Sess. 2005, 2005 WL 627977, *70–71 (Feb. 28, 2005) (jurisdiction cannot be divested by a later event, "whether beyond the plaintiff's control or the result of his own volition."). Removal is proper because Plaintiff's Complaint fails to clearly limit putative class membership in a manner sufficient to destroy minimal diversity.

## AMOUNT IN CONTROVERSY

20. Under CAFA, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied when a complaint does not allege a specific amount of damages. 28 U.S.C. § 1446(c)(2)(B). Because Louisiana plaintiffs cannot state the amount of their alleged damages in the Complaint, "a defendant seeking to sustain removal may follow either of two tracks: (1) Adduce summary judgment evidence of the amount

in controversy, or (2) demonstrate that, from the class plaintiffs' pleadings alone, it is 'facially apparent' that CAFA's amount in controversy is met." *See Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x 228, 231 (5th Cir. 2014). "As specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 81, 135 S. Ct. 547, 549, 190 L. Ed. 2d 495 (2014). Courts must aggregate the claims of all individual class members when determining whether the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(6).

21. Here, Plaintiff's Complaint pleads causes of action for: (1) gross negligence and negligence; (2) negligence *per se* under Section 5 of the FTC Act; (3) breach of fiduciary duty; (4) invasion of privacy; and (5) violations of the Louisiana Database Security Breach Notification Law. Plaintiff's prayer for relief seeks an award of compensatory, exemplary, punitive, and statutory damages, restitution, declaratory relief, attorneys' fees, and pre- and post-judgment interest. As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

22. <u>Claims for Negligence, Negligence *Per Se,* and Invasion of Privacy</u>. Plaintiff alleges that 1st Lake "owed a duty of care to Petitioner and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach." Compl., ¶ 90. Plaintiff also claims that 1st Lake "owed a duty to timely and accurately disclose to Petitioner and Class members the scope, nature, and occurrence of the Data Breach," and to "exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations." *Id.* at ¶¶ 94-95. Further, Plaintiff alleges that 1st Lake had a duty to use fair and

adequate security measures to safeguard personal information under Section 5 of the FTC Act, 15 U.S.C. § 45. *Id.* at ¶ 109.

23. As a result, Plaintiff claims that he and the putative class members "have or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress." *Id.* at ¶ 106. According to Plaintiff's Complaint, 1st Lake's breach of duty caused "actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face." *Id.* at ¶ 107.

24. Plaintiff seeks to recover, among other things, "the costs of future monitoring of their credit history for identity theft and fraud," and actual, compensatory, exemplary, punitive, and statutory damages on behalf of himself and the putative class "in an amount to be determined at trial." *Id.* at ¶ 139; Prayer for Relief. While the Complaint itself does not state the amount in controversy, one option for assigning value to these damages is through the cost of Plaintiff's requested credit monitoring. In fact, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements in factually similar data incident cases where the amount in controversy is not apparent from the face of the complaint. *See, e.g., Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKx), 2016 WL 4051265, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded

the $5 million threshold); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.*, No. 1:12-cv-2166, 2013 WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same).

25. Three main identity-protection agencies—Equifax, IDShield, and Experian—advertise monthly rates for credit-monitoring services ranging from $14.95 to $19.99 per person per month. For example, IDShield Individual offers one-bureau credit monitoring with an unlimited service guarantee, dark web internet monitoring, data breach notifications, full-service restoration when theft occurs, and 24/7 assistance, among other services, for $14.95 per month for one individual.[*] Similarly, both Equifax[†] and Experian[‡] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 a month, respectively. The cost of providing one year of credit-monitoring services at $14.95 per month (the cheapest of the three products) is approximately $5,220,181.20 (calculated as multiplying 29,098 individuals allegedly impacted in the Data Incident, times 12 months, times $14.95 per month). Thus, the Complaint's request for credit monitoring alone puts more than $5 million in controversy in this case.

26. <u>Declaratory and Other Equitable Relief</u>: Plaintiff asserts that "unless and until enjoined and restrained by an order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Petitioner and the Class since their PII are still maintained by Defendant with their inadequate cybersecurity system and policies." Compl., ¶ 137. Courts in the

---

[*] *See IDShield Plans & Pricing*, https://www.idshield.com/#plans (last visited Apr. 24, 2023).
[†] *See Equifax*, https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=50235599488 (last visited Apr. 24, 2023).
[‡] *See Experian CreditLock*, https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606&k_id (last visited Apr. 24, 2023).

Fifth Circuit evaluate requests for equitable or injunctive relief based on "the value of the object of the litigation, and the value of that right is measured by the losses that will follow." *Webb v. Investacorp, Inc*., 89 F.3d 252, 256 (5th Cir. 1996). The amount in controversy determination for CAFA cases "may be established either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." *Lewis v. Auto Club Fam. Ins. Co*., No. CIV.A. 11-169-D-M2, 2011 WL 3444312, at *3 (M.D. La. July 7, 2011), *report and recommendation adopted*, No. CIV.A. 11-169-JJB-CN, 2011 WL 3444224 (M.D. La. Aug. 8, 2011).

27. Applied here, Plaintiff appears to be seeking an order that 1st Lake discontinue use of its computer system because the current internal security measures do not protect Plaintiff's PII and do not conform to state and federal law. Compl., ¶ 26. As noted in the Report of the Senate Committee on the Judiciary on CAFA, when assessing the amount in declaratory relief claims, "[A] declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000." Senate Report at 41. Thus, the aggregate cost of complying with Plaintiff's untold changes to Defendant's cybersecurity practices based on alleged non-conformity with state and federal law would likely exceed the jurisdictional threshold.

28. Other Claims and Requested Relief: In addition to the claims above, Plaintiff states a claim to attorney fees and costs and pre- and post-judgment interest as allowed by law. *Id.* These amounts, to the extent they exist, combined with the other damages alleged in the Complaint, demonstrate that the amount in controversy is greater than $5,000,000.

29. Accordingly, because the case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, 1st Lake has properly removed the State Court Action to this Court.

## NO EXCEPTIONS TO CAFA APPLY

30. "The district court can decline jurisdiction under three provisions: (1) the home state exception, § 1332(d)(4)(B); (2) the local controversy exception, § 1332(d)(4)(A); and (3) discretionary jurisdiction, § 1332(d)(3)." *Preston*, 485 F.3d at 797; *see* §§ 1332(d)(3)-(4). Under CAFA, Plaintiff bears the burden of persuading the Court that an exception applies to the removal. The Fifth Circuit directs district courts to recognize that CAFA exceptions are narrow, "with all doubts resolved in favor of exercising jurisdiction over the case." *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 360 (5th Cir. 2011).

31. Under the local controversy and home state exceptions, plaintiffs have the burden of persuasion on whether two-thirds or more of the members of the proposed class and the primary defendants are citizens of the original filing state. *Robert J. Caluda, APLC v. City of New Orleans*, 403 F. Supp. 3d 522, 536, 541 (E.D. La. 2019); *see* 28 U.S.C. § 1332(d)(4)(A)-(B). Mailing addresses, standing alone, do not establish citizenship because addresses alone do not evidence domiciliary intent. *See Preston*, 485 F.3d at 798. Even so, as noted above, Defendants mailed approximately 29,098 notification letters across the country. Of that total, at least approximately 4,594 were returned as undeliverable and at least around 6,746 were mailed to residences outside the state of Louisiana, meaning only 61% (or less than the requisite two-thirds) arrived at Louisiana addresses.

32. What is more, Plaintiff could never demonstrate the citizenship of even one-third of the putative class members to satisfy the discretionary exception without speaking directly

to each person. The only records are last known mailing addresses for a class of individuals that consists overwhelmingly of individuals, by definition of being tenants, reside only temporarily at the last known address. Domicile requires an intent to remain in the state, a particularly challenging evidentiary burden when putative class members all consist of rental tenants with short-term leases. Because "CAFA does not permit the courts to make a citizenship determination based on a record bare of any evidence showing class members' intent to be domiciled in Louisiana," none of the CAFA exceptions are applicable here. *Preston*, 485 F.3d at 802.

33. Resolving all doubts in favor of CAFA jurisdiction, none of the CAFA exceptions apply to deny subject matter jurisdiction. Accordingly, removal to the United States District Court for the Eastern District of Louisiana is proper and in furtherance of congressional intent to expand federal diversity jurisdiction over interstate class actions.

## NOTICE

34. As required by 28 U.S.C. § 1446(d), 1st Lake is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of the Notice of Removal with the Clerk of the District Court for the Parish of Jefferson.

WHEREFORE, Defendant 1st Lake Properties, Inc., hereby removes the State Court Action from the District Court for the Parish of Jefferson, to the United States District Court for the Eastern District of Louisiana.

Respectfully submitted this 1st day of May, 2023.

By:   /s/ Jeffrey J. Gelpi
Jeffrey J. Gelpi (#37130)
**KEAN MILLER LLP**
909 Poydras Street, Suite 3600
New Orleans, Louisiana 70112
Telephone: (504) 585-3050
jeff.gelpi@keanmiller.com

Karli Glascock Johnson (#26304)
Alexandra E. Rossi (#35297)
**KEAN MILLER LLP**
400 Convention Street, Suite 700
P. O. Box 3513 (70821-3513)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
karli.johnson@keanmiller.com
alexandra.rossi@keanmiller.com

Carrie H. Dettmer Slye (pro hac vice[*])
**BAKER & HOSTETLER LLP**
cdettmerslye@bakerlaw.com
312 Walnut Street, Suite 3200
Cincinnati, OH 45202-4074
Telephone: 513.929.3400

Casie D. Collignon (pro hac vice[*])
**BAKER & HOSTETLER LLP**
ccollignon@bakerlaw.com
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone: 303.764.4037

*Attorneys for Defendant 1st Lake Properties, Inc.*

---

[*] Applications to be admitted pro hac vice forthcoming.

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the above and foregoing has been served on all known counsel of record by electronic mail and/or by placing a copy in the United States mail, postage prepaid and properly addressed.

    New Orleans, Louisiana, this 1st day of May, 2023.

    /s/ Jeffrey J. Gelpi
    Jeffrey J. Gelpi