UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KEVIN MERRELL                                    CIVIL ACTION

VERSUS                                           NO. 23-1450

1ST LAKE PROPERTIES, INC.                        SECTION "R" (2)


## ORDER AND REASONS

Before the Court is defendant's motion to dismiss.[1]  Plaintiff opposes the motion.[2]  For the reasons set forth below, the Court grants in part and denies in part the motion to dismiss.


## I.    BACKGROUND

Defendant is a developer and property manager in the New Orleans area.[3] This action arises from a data breach of sensitive personal information ("PII") collected and held by defendant in the course of its business. Defendant learned of the breach in December 2021 and notified those affected in July 2022.[4]  The information affected by the breach included

---

[1]     R. Doc. 16.
[2]     R. Doc. 17.
[3]     R. Doc. 1-2 ¶ 7.
[4]     *Id.* ¶¶ 14-15.

names, Social Security numbers ("SSN"), driver's license numbers, financial account numbers, credit card numbers, and debit card numbers.[5]  Plaintiff was a tenant at one of defendant's properties from about 2017 to 2018 and alleges that his information was compromised as a result of the breach.[6]  He filed a class action petition in state court in March 2023 on behalf of all individuals residing in Louisiana whose personal information was affected.[7]  Defendant removed the action to this Court.[8]

Plaintiff alleges that he has suffered three incidents of identity theft resulting from the data breach.  First, Verizon Communications Inc. claimed plaintiff owed $700 as a result of fraudulent purchases.[9]  Plaintiff reported the fraud and closed the account.[10]  Second, AT&T Corporation ("AT&T") claimed plaintiff owed $800 as a result of fraudulent purchases.[11]  AT&T has not removed these charges and is requiring plaintiff to file a police report before it does.[12]  Third, plaintiff discovered an unauthorized inquiry from T-Mobile US Inc. on his credit report.[13]

---

[5]      *Id.* ¶ 18.
[6]      *Id.* ¶ 24.
[7]      *Id.* ¶ 67.
[8]      R. Doc. 1.
[9]      R. Doc. 1-2 ¶ 32.
[10]     *Id.*
[11]     *Id.* ¶ 33.
[12]     *Id.*; R. Doc. 17 at 8.
[13]     R. Doc. 1-2 ¶ 34.

Plaintiff does not recall receiving any notifications that his personal information was compromised in any data breach other than defendant's.[14] He thus contends that that these three incidents were caused by defendant's breach.[15]  Plaintiff also alleges that, as a result of the breach, he is subject to a continuing substantial risk of future identity fraud; he has suffered anxiety, sleep disruption, stress, fear, and frustration; the value of his personal information has diminished; and he has lost time and money attempting to mitigate injuries, including preventing, detecting, contesting, and recovering from identity theft and fraud.[16]  Plaintiff brings claims for negligence, negligence *per se*, breach of fiduciary duty, invasion of privacy, and violation of the Louisiana Database Security Breach Notification Law.[17]  Defendant moves to dismiss these claims for lack of Article III standing and for failure to state a claim upon which relief can be granted.[18]

The Court considers the motion below.

---

[14]   *Id.* ¶ 28.
[15]   *Id.*
[16]   *Id.* ¶¶ 37, 39, 41.
[17]   *Id.* ¶¶ 88-147.
[18]   R. Doc. 16.

## II.    DEFENDANT'S RULE 12(b)(1) MOTION

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim. Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). In ruling on a Rule 12(b)(1) motion to dismiss, the Court may rely on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by the undisputed facts plus the court's resolution of disputed facts." *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017) (quoting *Barrera-Montenegro*, 74 F.3d at 659). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To survive a motion to dismiss under Rule 12(b)(1) based on lack of Article III standing, a plaintiff must establish: "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014)

(quoting *Lujan v. Wildlife Defs.*, 504 U.S. 555, 560 (1992)).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 573 U.S. at 560).  To determine whether an injury is concrete, a court must assess "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (quoting *Spokeo*, 578 U.S. at 341).  A plaintiff "must demonstrate standing for each claim that [he] press[es] and for each form of relief that [he] seek[s] (for example, injunctive relief and damages)." *Id.* at 2208.

The "manner and degree of evidence required" to show standing is proportionate to the stage of litigation at which the standing inquiry occurs. *TransUnion*, 141 S. Ct. at 2208 (quoting *Lujan*, 504 U.S. at 561).  At the motion to dismiss stage, "both the trial and reviewing courts must accept as true all material allegations of the complaint." *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264-65 (1991) (citations omitted).  To establish standing for a class action complaint, only the named plaintiff who represents the class must demonstrate an injury,

"not that the injury has been suffered by other, unidentified members of the class." *Spokeo*, 578 U.S. at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)).

### B.    Discussion

Plaintiff alleges that he has suffered four kinds of injury-in-fact: (1) actual injury from exposure and theft of personal information, (2) imminent and impending injury resulting from substantially increased risk of fraud and misuse of the stolen personal information, (3) diminution in the value of personal information, and (4) loss of time and money spent mitigating injuries. Since the Court finds that the first theory states an injury sufficient to confer standing for each of plaintiff's claims, the Court declines to consider the rest.

Defendant alleges that the incidents of identity theft plaintiff has already suffered are not injuries-in-fact. Defendant specifically contends that the incidents did not result in actual financial loss to plaintiff because they were reimbursed.[19] Defendant further argues that the risk of future

---

[19]    *Id.* at 4-5.

incidents of identity theft is too remote and speculative to constitute an injury-in-fact under Article III.[20]

The Fifth Circuit has not addressed whether identity theft that results in unauthorized, but reimbursed, charges can constitute an injury-in-fact. Yet, it has held that, under certain circumstances, financial injury that could be avoided or borne by a third party can confer standing. *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 161-63 (5th Cir. 2016) (holding appellant suffered economic harm despite third-party payor); *Texas v. United States*, 787 F.3d 733, 749 (5th Cir. 2015) ("A plaintiff suffers an injury even if it can avoid that injury by incurring other costs."); *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 192 (5th Cir. 2015) ("[The insurer] argues that its refusal to pay based on the full charges [the hospital provider] reported did not cause patients any injury because they were never at imminent risk of out-of-pocket expenses. . . . We cannot agree."). In any case, plaintiff alleges that there are at least $800 worth of unreimbursed charges.[21] At this stage, that is sufficient to constitute an injury-in-fact for purposes of Article III. *See All. for Hippocratic Med. v. Food & Drug*

---

[20]     *Id.* at 5-8.
[21]     R. Doc. 1-2 ¶ 33; R. Doc. 17 at 8.

*Admin.*, 78 F.4th 210, 235 (5th Cir. 2023) ("[E]conomic harm . . . is a quintessential Article III injury.").

Moreover, courts have recognized that exposure, theft, and misuse of PII itself constitutes sufficient injury to confer Article III standing.  *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 681 (4th Cir. 2023) ("Everyone agreed that plaintiffs who had experienced actual 'fraudulent misuse of their personal information' had suffered a cognizable injury."); *accord Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017) ("Nobody doubts that identity theft, should it befall one of these plaintiffs, would constitute a concrete and particularized injury."); *Alleruzzo v. SuperValu, Inc.*, 870 F.3d 763, 773 (8th Cir. 2017) ("[A]llegations of misuse of Card Information were sufficient to demonstrate . . . standing.").  Under *TransUnion LLC v. Ramirez*, a plaintiff need not show "that the level of harm he has suffered would be actionable under a similar, common-law cause of action," only that "the type of harm he's suffered is similar in kind to a type of harm that the common law has recognized as actionable."  *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022).  Unauthorized disclosure of plaintiff's PII to third parties is analogous to the common-law tort of invasion of privacy based on public disclosure of private facts.  *See Restatement (Second) of Torts* § 652D (Am. Law Inst. 1977) (outlining elements of tort); 9 Alfred Gans

et al., *American Law of Torts* § 30:29, Westlaw (database updated March 2023) (discussing history of tort); *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 285 (2d Cir. 2023) (holding unauthorized exposure of PII is analogous to public disclosure of private facts under *TransUnion*).

Actual theft and misuse of PII is analogous to the common law tort of invasion of privacy by appropriation of name or likeness.  *See Restatement (Second) of Torts* § 652C (Am. Law Inst. 1977) (outlining elements of tort); Harold Gordon, *Right of Property in Name, Likeness, Personality and History*, 55 Nw. U. L. Rev. 553 (1960) (discussing development of appropriation of name or likeness tort); *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 374 (1st Cir. 2023) (holding misuse of PII "is closely related to the tort of invasion of privacy based on appropriation of another's name or likeness"); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023) (holding misuse of PII after theft is concrete injury-in-fact under *TransUnion*).

Based on the foregoing authorities, the Court finds that the exposure and misuse of plaintiff's PII constitute concrete and particularized injuries-in-fact for purposes of Article III.  Further, plaintiff's allegations suffice to establish concrete injuries for standing purposes for each of his claims for damages.  Standing as to one claim does not "suffice for all claims arising

from the same 'nucleus of operative fact.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  Whether a plaintiff has standing to press multiple claims depends on whether the injury alleged gives the plaintiff "the requisite stake in the outcome" of each claim.  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).  The theory of recovery underlying each of plaintiff's claims is that defendant had an obligation to safeguard plaintiff's PII—by implementing reasonable electronic data protection protocols,[22] by ensuring it was not disclosed in an unauthorized manner to third parties,[23] and by notifying plaintiff in a timely manner of any security breaches[24]—which defendant breached, resulting in the unauthorized exposure, theft, and misuse of his PII.[25] *See, e.g.*, *TransUnion*, 141 S. Ct. at 2213 (grouping claims by theory of recovery for standing analysis); *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 735 (5th Cir. 2023) (same); *Perez*, 45 F.4th at 823-26 (analyzing standing for damages and injunctive relief separately).

Plaintiff's state court petition also seeks declaratory, injunctive, and other equitable relief as necessary to protect the interests of plaintiff and the class.[26]  To establish standing to press claims for prospective relief, plaintiff

---

[22]   *See, e.g.*, R. Doc. 1-2 ¶¶ 90, 93, 100, 111, 122.

[23]   *See, e.g.*, *id.* ¶¶ 102, 131.

[24]   *See, e.g.*, *id.* ¶¶ 94, 123, 147.

[25]   *See, e.g.*, *id.* ¶¶ 107, 117, 124, 136, 147.

[26]   R. Doc. 1-2 at 28.

must show that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *All. for Hippocratic Med.*, 78 F.4th at 227 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted)).   When, as here, a plaintiff alleges a substantial risk of future identity theft as a result of actual theft and misuse of PII, courts have usually found the allegations sufficient to state an imminent and certainly impending injury.   *Webb*, 72 F.4th at 374-76 (holding standard met where plaintiff alleged PII was stolen by criminals, some information had already been misused, and information included SSNs and names); *Bohnak*, 79 F.4th at 289 ("We conclude that the allegations of a targeted hack that exposed [plaintiff]'s name and SSN to an unauthorized actor are sufficient to suggest a substantial likelihood of future harm."); *Clemens v. ExecuPharm Inc.*, 48 F4th 146, 157 (3d Cir. 2022) ("Because we can reasonably assume that many of those who visit the Dark Web . . . do so with nefarious intent, it follows that [plaintiff] faces a substantial risk of identity theft or fraud by virtue of her personal information being made available on underground websites."); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018) (holding plaintiffs' allegations "that their data has been stolen, accessed, and used in a fraudulent manner" sufficiently stated "an imminent threat of injury"), *cited*

*with approval in O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 244 (4th Cir. 2023); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) ("Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints."); *Dinerstein v. Google, LLC*, 73 F.4th 502, 516 (7th Cir. 2023) (noting that the Seventh Circuit has recognized substantial risk of future harm when plaintiffs alleged theft of credit-card information); *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2010) ("[T]he information taken in the data breach still gave hackers the means to commit fraud or identity theft."); *Green-Cooper*, 73 F.4th at 889 ("[M]isuse of the data cybercriminals acquire from a data breach . . . constitutes both a 'present' injury and a 'substantial risk' of harm in the future."); *Attias*, 865 F.3d at 628-29 ("[A] substantial risk of harm exists already, simply by virtue of the hack and the nature of the data that the plaintiffs allege was taken. That risk . . . satisfies the requirement of an injury in fact."). Accordingly, the Court finds that plaintiff has shown a substantial risk of future harm sufficient to confer standing to pursue claims for prospective relief.

Defendant argues that even if plaintiff has stated an injury-in-fact, that injury is not traceable to defendant because plaintiff's information may have

been compromised in another data breach.[27]   Plaintiff has alleged that he does not recall receiving any other notices of data breach,[28] and that his PII was compromised because defendant failed to implement minimum safeguards in contravention of its legal obligation to do so.[29]   At this stage, nothing further is required to establish traceability for constitutional purposes.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct."); *Glen v. Am. Airlines*, 7 F.4th 331, 335-36 (5th Cir. 2021) ("To show traceability, a plaintiff must allege that his injury is 'connect[ed] with the conduct about which he complains.'" (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018))); *Daves v. Dallas County*, 22 F.4th 522, 542 (5th Cir. 2022) ("[T]he plaintiff must demonstrate 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" (quoting *DaimlerChrysler Corp.*, 547 U.S. at 342)).

---

[27]   R. Doc. 16-1 at 6-8.

[28]   R. Doc. 1-2 ¶ 28.

[29]   *Id.* ¶¶ 52-65.

Additionally, defendant argues that plaintiff's injury is not redressable because plaintiff has suffered no actual loss.[30]  Insofar as plaintiff has stated injuries that are cognizable under Article III, those injuries are redressable in the form of compensation and injunctive relief as sought in the petition. *See Remijas*, 794 F3d at 696-97 (holding that while reimbursed fraudulent charges may not be redressable by monetary damages, the same is "not true for the mitigation expenses or the future injuries" and noting that "a favorable judicial decision could redress any injuries caused by less than full reimbursement of unauthorized charges"); *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 71, 375 (5th Cir. 2021) ("Plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." (quoting *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019))).  Additionally, plaintiff alleges at least some unreimbursed charges.[31]

---

[30]    R. Doc. 16-1 at 7-8.

[31]    R. Doc. 1-2 ¶ 33; R. Doc. 17 at 8.

14

## III.   DEFENDANT'S RULE 12(b)(6) MOTION

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.*  Additionally, the Court may "consider matters of which [it] may take judicial notice." *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (alteration in original)

(quoting *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (internal quotation marks omitted)).

### B. Discussion

#### 1. *Negligence, Gross Negligence, and Negligence Per Se*

There are five elements of a negligence claim under Louisiana law: duty, breach, factual causation, legal causation, and damages. *Jack v. Evonik Corp.*, No. 22-30526, 2023 WL 5359086, at *4 (5th Cir. Aug. 22, 2023); *see* La. Civ. Code Ann. art. 2315. The duty-risk analysis "is the standard negligence analysis employed in determining whether to impose liability." *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Lemann v. Essen Lane Daiquiris*, 923 So. 2d 627, 633 (La. 2006)). Like ordinary negligence, gross negligence is analyzed under the duty-risk analysis. *Rathey v. Priority EMS, Inc.*, 894 So. 2d 438, 459 (La. App. 4 Cir. 2005). To determine whether a defendant owes a plaintiff a duty, Louisiana courts "examine 'whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.'" *Audler*, 519 F.3d at 249 (quoting *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La. 1993)).

16

Plaintiff alleges that defendant owed him the following duties: (1) to "exercise reasonable care in handling and using the PII in its care," (2) to "implement industry-standard security procedures sufficient to reasonably protect the information from a data breach," (3) to "promptly detect attempts at unauthorized access," and (4) to "notify [plaintiff] within a reasonable timeframe of any breach."[32]  But plaintiff offers no statutory or case authority articulating these standards.  *See Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 444-45 (5th Cir. 2021) ("While Louisiana law does impose a 'universal duty' on defendants in a negligence action to use 'reasonable care,' plaintiffs are still required to assert a 'specific standard' of care." (citations omitted) (quoting *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1086 (La. 2009))).  Accordingly, plaintiff's negligence claim must be dismissed.

### 2.   *Negligence* Per Se

Negligence *per se* is not recognized under Louisiana law.  *Ducote v. Boleware*, 216 So. 3d 934, 944 (La. App. 4 Cir. 2016).  Accordingly, this claim must be dismissed.

---

[32]   R. Doc. 1-2 ¶ 93.

3.     *Breach of Fiduciary Duty*

"Generally, whether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties."  *Scheffler v. Adams & Reese, LLP*, 950 So. 2d 641, 647 (La. 2007).  One acts in a fiduciary capacity if he holds property "for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other."  *Id.* (quoting *State v. Hagerty*, 251 La. 477, 492 (1967)).  A contractual relationship "does not establish a fiduciary duty." *Petre v. Living Ctrs.-East, Inc.*, 935 F. Supp. 808, 812 (E.D. La. 1996).  "A cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority."  *Gerdes v. Estate of Cush*, 953 F.2d 201, 205 (5th Cir. 1992).

Here, plaintiff alleges that defendant stood in a fiduciary relationship with him when it took custody of his PII.[33]  Louisiana courts have not addressed whether the relationship between a landlord and tenant can be converted into a fiduciary relationship by the landlord's maintenance of a database of PII.  But this does not in itself distinguish plaintiff's relationship with defendant from an ordinary landlord-tenant relationship, and plaintiff

---

[33]     R. Doc. 1-2 ¶ 119.

refers to no lease provision or other contractual agreement in which defendant agreed to act as a fiduciary. Therefore, the relationship is simply a contractual one that does not impose fiduciary responsibilities on the defendant. *See, e.g.*, *Attias v. Carefirst, Inc.*, 365 F. Supp. 3d 1, 5 (D.D.C. 2019) ("Plaintiffs fail to plead anything to suggest that their relationship with [defendant] was anything more than the typical commercial relationship."); *Weisenberger v. Ameritas Mut. Holding Co.*, 597 F. Supp. 3d 1351, 1368 (D. Neb. 2022) ("[C]ourts have been less willing to extend a fiduciary relationship to what is otherwise a regular business transaction."); *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 582 (W.D. Penn. 2004) ("[T]he relationship between . . . landlord and tenant does not in itself create a setting giving rise to a confidential or fiduciary relationship. . . . [A] confidential or fiduciary relationship can arise in such a setting 'only if one party surrenders substantial control over some portion of his affairs to the other.'" (quoting *Dep't of Transp. v. E-Z Parks, Inc.*, 620 A.2d 712, 717 (Pa. Commw. Ct. 1993)); *Toc Retail, Inc. v. Gulf Coast Oil Co.*, No. 94-1949, 1996 WL 67633, at *4-5 (E.D. La. Feb. 14, 1996) (holding landlord-tenant relationship not fiduciary in nature).

Additionally, plaintiff's allegations that defendant was negligent in securing and protecting his PII does not amount to "fraud, breach of trust,

or an action outside the limits of the fiduciary's authority." *See F.D.I.C. v. Duffy*, 47 F.3d 146, 152 (5th Cir. 1995) ("The definition of breach of fiduciary duty in Louisiana requires that the act constituting the breach be intentional."). Thus, even if there were a fiduciary relationship between plaintiff and defendant, plaintiff's allegations fail to state a claim under Louisiana law.

### 4.  *Invasion of Privacy*

There are four theories of invasion of privacy under Louisiana law: "(1) by appropriating an individual's name or likeness; (2) by unreasonably intruding on physical solitude or seclusion; (3) by giving publicity which unreasonably places a person in a false light before the public; and (4) by unreasonable public disclosure of embarrassing private facts." *Brunner v. Holloway*, 235 So. 3d 1153, 1161 (La. App. 1 Cir. 2017). Each theory requires a plaintiff to show that "a defendant's conduct is unreasonable and seriously interferes with another's privacy interest." *Bradix v. Advance Stores Co., Inc.*, 226 So. 3d 523, 530 (La. App. 4 Cir. 2017) (quoting *Landrum v. Bd. Of Comm'rs of the Orleans Levee Dist.*, 685 So.2d 382, 392 (La. App. 4 Cir. 1996)). Invasion of privacy is an intentional tort. *Pinero*, 594 F. Supp. 2d at 721.

20

Plaintiff alleges that "[t]he unauthorized acquisition (*i.e.*, theft) by a third party of . . . PII is highly offensive to a reasonable person," and that this constitutes an "intentional interference with [plaintiff's] interest in . . . seclusion."[34]   Additionally, plaintiff argues that defendant "intentionally [disclosed] [p]laintiff's PII" by "placing it in an electronic format that had no security measures in place."[35]   But plaintiff fails to plausibly allege any facts suggesting that defendant intended to expose his PII to breaches.   The allegation that defendant failed to adopt security measures does not plausibly suggest an intent to disclose PII to third parties.   *See In re Mednax Servs.*, 803 F. Supp. 3d at 1225-26 ("Plaintiff['s] invasion-of-privacy claim fails because [he] do[es] not allege that [d]efendant[] intentionally disclosed [his] . . . PII to unauthorized persons."); *Feins v. Goldwater Bank NA*, No. 22-00932, 2022 WL 17552440, at *5 (D. Ariz. Dec. 9, 2022) (holding that invasion of privacy claim failed where hacker stole information because defendant took no intentional action to disclose PII); *Purvis v. Aveanna Healthcare LLC*, 563 F. Supp. 3d 1360, 1377 (N.D. Ga. 2021) ("Plaintiffs have not plausibly alleged any facts indicating that Defendant—as opposed to the third party that allegedly carried out the Data Breach—actively participated

---

34   R. Doc. 1-2 ¶¶ 130, 132.
35   R. Doc. 17 at 19.

in the alleged intrusion into Plaintiffs' affairs."). Accordingly, plaintiff has failed to state a claim for invasion of privacy.

### 5.   *Louisiana Database Security Breach Notification Law*

The Louisiana Database Security Breach Notification Law ("LDSBNL") provides that "[a] civil action may be instituted to recover actual damages resulting from the failure to disclose in a timely manner to a person that there has been a breach of the security system resulting in the disclosure of a person's personal information." La. Stat. Ann. § 51:3075. The notification required by LDSBNL "shall be made in the most expedient time possible and without unreasonable delay but not later than sixty days from the discovery of the breach," with certain exceptions. *Id.* § 51:3074(E). Because Louisiana requires a plaintiff to show "manifest physical or mental injury . . . in order to obtain any damage recovery," a plaintiff must allege "actual damages;" namely, "that someone actually used the disclosed information to his detriment." *Ponder v. Pfizer, Inc.*, 522 F. Supp. 2d 793, 797-98 (M.D. La. 2007) (quoting *Bonnette v. Conoco, Inc.*, 837 So. 2d 1219, 1230 n.6 (La. 2003) (internal quotation marks omitted)).

Here, plaintiff alleges that the breach occurred more than sixty days after the discovery of the breach. Additionally, plaintiff alleges that his PII

was "disclosed" and "used to his detriment." *See In re MCG Health Data Sec. Issue Litig.*, No. 22-849, 2023 WL 3057428, at *13 (W.D. Wash. Mar. 27, 2023) ("Plaintiff Ictech's claims that she suffered multiple fraudulent charges on her debit card is sufficient to state actual damages under the LDSBNL. . . . Plaintiff Strecker has not sufficiently alleged any actual damage. She has not alleged that a third party actually used her information to her detriment."); *Cf. Pinero*, 594 F. Supp. 2d at 717 (holding no recoverable damages exist where plaintiff did not allege actual identity fraud). Thus, plaintiff has stated a claim sufficient to survive the motion to dismiss stage under LDSBNL.

## III.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. The Court grants defendant's motion with respect to the negligence, negligence *per se*, breach of fiduciary duty, and invasion of privacy claims. The negligence claim is DISMISSED WITHOUT PREJUDICE, and plaintiff may file an amended Complaint within 20 days of this Order to remedy the deficiencies identified herein. The negligence per se, breach of fiduciary duty, and invasion of privacy claims are DISMISSED

WITH PREJUDICE.  The Court denies defendant's motion with respect to the Louisiana Database Security Breach Notification Law claim.


New Orleans, Louisiana, this __28th__ day of September, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE