UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KEVIN MERRELL                                        CIVIL ACTION

VERSUS                                               NO. 23-1450

1ST LAKE PROPERTIES, INC.                            SECTION "R" (2)


**ORDER AND REASONS**


Before the Court is defendant's motion to dismiss Count I and strike Count II of the amended complaint.[1]  Plaintiff opposes the motion.[2]  For the reasons set forth below, the Court denies the motion.


## I.      BACKGROUND

Defendant is a developer and property manager in the New Orleans area.[3]  This action arises from a data breach of personally identifiable information ("PII") collected and held by defendant in the course of its business.  Plaintiff alleges that defendant learned of the breach in December

---

[1]      R. Doc. 27.
[2]      R. Doc. 29.
[3]      R. Doc. 24 ¶ 5.

2021 and that plaintiff was notified of the breach in late 2022.[4] The information affected by the breach allegedly included names, Social Security numbers ("SSN"), driver's license numbers, financial account numbers, credit card numbers, and debit card numbers.[5] Plaintiff was a tenant at one of defendant's properties from about 2017 to 2018 and alleges that his information was compromised as a result of the breach.[6] Specifically, plaintiff alleges that he suffered three incidents of identity theft. First, Verizon Communications Inc. allegedly claimed plaintiff owed $700 as a result of fraudulent purchases, after which plaintiff allegedly reported the fraud and closed the account.[7] Second, plaintiff alleges that AT&T Corporation ("AT&T") claimed plaintiff owed $800 as a result of fraudulent purchases.[8] Plaintiff further alleges that AT&T has not removed these charges and is requiring plaintiff to file a police report before it does.[9] Third, plaintiff claims he discovered an unauthorized inquiry from T-Mobile US Inc. on his credit report.[10]

---

[4]     *Id.* ¶¶ 12-13.

[5]     *Id.* ¶ 16.

[6]     *Id.* ¶ 22.

[7]     *Id.* ¶ 30.

[8]     *Id.* ¶ 31.

[9]     *Id.* ¶ 32.

[10]     *Id.* ¶ 34.

Plaintiff filed a class action in state court in March 2023 on behalf of all individuals residing in Louisiana whose personal information was held by the defendant and affected by the data breach.[11]  Defendant removed the action to this Court[12] and filed a motion to dismiss the state court petition.[13] The Court partially granted the motion, dismissing with prejudice plaintiff's claims for negligence per se, breach of fiduciary duty, and invasion of privacy; dismissing without prejudice plaintiff's negligence claim; and allowing plaintiff's Louisiana Database Security Breach Notification Law ("LDSBNL") claim to go forward.[14]  The Court granted plaintiff leave to file an amended complaint to address the deficiencies the Court identified in plaintiff's negligence claim, specifically, plaintiff's failure to "offer[] statutory or case authority articulating" the duties plaintiff alleged defendant owed to him.[15]

Plaintiff has now filed an amended complaint alleging negligence under Louisiana law and a violation of the LDSBNL.[16]  As to the negligence claim, the amended complaint added citations to various provisions of the

---

[11]   R. Doc. 1-2.
[12]   R. Doc. 1.
[13]   R. Doc. 16.
[14]   R. Doc. 23.
[15]   *Id.*
[16]   R. Doc. 24.

LDSBNL and Section 5 of the Federal Trade Commission ("FTC") Act, which plaintiff contends sufficiently articulate standards supporting the duty element of a negligence claim under Louisiana law. Defendant moves to dismiss the negligence claim under Federal Rule of Civil Procedure 12(b)(6) and to strike the LDSBNL claim under Federal Rule of Civil Procedure 12(f).[17]

The Court considers the motion below.

## II.   RULE 12(b)(6)

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

---

[17]   R. Doc. 27.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* Additionally, the Court may "consider matters of which [it] may take judicial notice." *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (alteration in original) (quoting *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (internal quotation marks omitted)).

### B.    Plaintiff's Negligence Claim

Defendant contends that plaintiff's amended negligence claim must be dismissed because neither the LDSBNL, nor the FTC Act cited by plaintiff supplies the basis for a duty under Louisiana negligence law, and plaintiff does not allege actual damages sufficient to sustain a claim for negligence.

The Court held that plainitff's original complaint failed to allege statutory or case law authority to support a duty in negligence under Louisiana law. In the amended complaint, plaintiff cites the LDSBNL, the FTC Act, and federal caselaw supporting the duties he alleges. Plaintiff

contends that defendant owed him specific duties supported by the text of the LDSBNL to maintain reasonable security procedures and practices to protect PII,[18] take all reasonable steps to destroy or arrange for the destruction of records within its custody or control containing PII that were no longer needed,[19] and keep victims of potential data breaches notified.[20] Plaintiff further alleges that Section 5 of the FTC Act supports a duty owed by a business to employ reasonable measures to protect and secure the PII that it collects, citing FTC guidance and federal caselaw.[21]  Louisiana courts have not ruled on whether LDSBNL or the FTC Act and associated caselaw set forth cognizable standards for the purposes of a duty-risk analysis under Louisiana negligence law.

There are five elements of a negligence claim under Louisiana law: duty, breach, factual causation, legal causation, and damages. *Jack v. Evonik Corp.*, 79 F.4th 547, 556 (5th Cir. 2023); La. Civ. Code Ann. art. 2315. The duty-risk analysis "is the standard negligence analysis employed in determining whether to impose liability." *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Lemann v. Essen Lane Daiquiris,*

---

[18]     R. Doc. 24 ¶ 86 (citing La. Rev. Stat. Ann. § 51:3074, *et seq.*).
[19]     *Id.* ¶ 92 (citing La. Rev. Stat. Ann. § 51:3074(B)).
[20]     *Id.* ¶ 91 (citing La. Rev. Stat. Ann. §§ 51:3074(B) and (C)).
[21]     *Id.* ¶ 95.

*Inc.*, 923 So. 2d 627, 633 (La. 2006)).   Like ordinary negligence, gross negligence is analyzed under the duty-risk analysis.   *Rathey v. Priority EMS, Inc.*, 894 So. 2d 438, 459 (La. App. 4 Cir. 2005).   To determine whether a defendant owes a plaintiff a duty, Louisiana courts "examine 'whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.'" *Audler*, 519 F.3d at 249 (quoting *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La. 1993)); *see also Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 445 (5th Cir. 2021) (citing *Lemann*, 923 So. 2d at 633).

To plead a duty, a Louisiana negligence plaintiff must cite a specific standard of care by pointing to "any law (statutory, jurisprudential, or arising from general principles of fault)."   *Lemann*, 923 So. 2d at 633.   The Fifth Circuit has recognized that Louisiana law may look to federal statutory and regulatory schemes in delineating the scope of a duty under the duty-risk analysis.   *See Bd. of Comm'rs of Se. La. Flood Prot. Auth. – East v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 727 (5th Cir. 2017) (applying Louisiana law and noting "this court has often held that violation of a [f]ederal law or regulation can be evidence of negligence" (citation and internal quotation marks omitted) (alteration in original)).

As to the LDSBNL, the Court finds that the statute articulates sufficient standards of conduct to satisfy the requirements for a duty under Louisiana negligence law. "In order for the violation of a . . . statute to constitute actionable negligence, the violation must be encompassed within the scope of the risks that the statute was designed to protect against." *Snyder v. Bergeron*, 501 So. 2d 291, 293 (La. App. 1 Cir. 1986*)*. While the legislative findings that preface the LDSBNL do not articulate binding standards, they define the scope of the risks that the statute was designed to protect against, such as the risks to "[t]he privacy and financial security of individuals" posed by "the ever more widespread collection of personal information" and the risks posed by the failure to timely notify victims of identity theft. La. Rev. Stat. Ann. § 51:3072; *see also* Haley Zhu-Butler, *Establishing A Cause of Action for Cybersecurity Breaches Against Government Agencies in Louisiana*, 68 Loy. L. Rev. 415, 435-36 (2022) ("The LDSBNL was enacted to protect the security of individuals when their information is collected and stored electronically because the legislature recognized the potential for abuse should this information be accessed by unauthorized, ill-intentioned parties."). Accordingly, the Court finds that plaintiff's allegations are encompassed within the scope of the risks that the statute was designed to protect against.

Further, the statute imposes specific duties to (1) "implement and maintain reasonable security procedures . . . appropriate to the nature of the information to protect the personal information from unauthorized access, destruction, use, modification, or disclosure;" (2) "take all reasonable steps to destroy . . . the records . . . containing personal information that is no longer to be retained;" and (3) notify individuals whose information may have been compromised in a data breach "in the most expedient time possible and without unreasonable delay, but not later than sixty days from discovery of the breach."  La. Rev. Stat. Ann. §§ 3074(A)-(E); *cf. Butler v. E.I. Dupont de Nemours & Co.*, No. 22-30069, 2022 WL 5059893, at *3 (5th Cir. Oct. 4, 2022) (finding plaintiff failed to allege specific standard when they pointed to statute which "merely establish [defendant's] general role in the state, the general powers it holds, and the general contours of its actions"). Accordingly, the Court finds that plaintiff's citations to the LDSBNL provide some "law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty."  *Butler*, 16 F.4th at 445 (quoting *Lemann*, 923 So. 2d at 633); *see also Berthelot v. Union Carbide Corp.*, No. 22-793, 2022 WL 3280100, at *4 (E.D. La. Aug. 11, 2022) ("[Plaintiff's citation to and application of statute] is a far-cry from . . . plaintiff's allegations [in *Butler v. Denka Performance Elastomer, L.L.C.*,

16 F.4th 427 (5th Cir. 2021)] . . . that generally alluded to 'unreasonably excessive emissions.'").

As to the FTC Act, the Court finds that the statute, associated caselaw, and administrative decisions sufficiently identify particular duties with standards specific enough to support a negligence claim. Section 5 of the FTC Act prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Plaintiff contends that this statute imposes a duty on businesses to employ reasonable measures to protect and secure PII, including by maintaining and testing security systems to ensure PII is protected, implementing processes to timely detect security breaches, and complying with industry security standards.[22] Federal courts have held that "[s]ection 5 of the FTC Act . . . creates enforceable duties, and [these duties are] ascertainable as it relates to data breach cases." *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020); *see also Perry v. Bay & Bay Transp. Servs., Inc.*, 650 F. Supp. 3d 743, 754 (D. Minn. 2023) (holding that Section 5 imposes a specific standard of care in the data security context). The FTC has repeatedly exercised its authority to enforce Section 5's prohibition against unfair or deceptive

---

[22]    R. Doc. 24 ¶¶ 95-97.

practices to prosecute businesses for failing to implement reasonable data security measures, and federal courts have found that this is an appropriate exercise of the FTC's authority. *See F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240-49 (3d Cir. 2015) (finding FTC stated a claim for a violation of Section 5's prohibition on unfair practices when it alleged, among other things, that defendant allowed subsidiaries to store credit card information in clear text, failed to use readily available security measures such as firewalls, did not adequately restrict third-party access to networks).

Orders issued by the FTC articulate specific standards of conduct that constitute "reasonable measures" under Section 5. *See Residual Pumpkin Entity, LLC*, F.T.C. Pub. 192-3209, No. 4768, 2022 WL 2355879 (June 23, 2022) (requiring business to implement written "comprehensive information security program," including, among other specific measures, periodic threat assessment and system security verification, technical measures to monitor networks for security events, policies and procedures for minimizing data collection and deleting unnecessary data, encryption of social security numbers, and multi-factor authentication); *Twitter, Inc.*, F.T.C. Pub. 202-3062, No. 4316, 2022 WL 2160376 (May 26, 2022) (same); *Chegg, Inc.*, F.T.C. Pub. 202-3151, No. 4782, 2023 WL 1438660 (Jan. 25, 2023) (same).

Moreover, the Louisiana Legislature has codified the principle that a failure to "implement and maintain reasonable [data] security procedures and practices" constitutes "an unfair act or practice" for purposes of the Louisiana Unfair Trade Practices Act ("LUTPA"). La. Rev. Stat Ann. §§ 51:3074(A) & (J). Louisiana courts have recognized that the LUTPA "was modeled after the . . . FTC Act . . . and the two acts share the same goals: to protect consumers and to foster competition." *Guillory v. Broussard*, 190 So. 3d 486, 497 (La. App. 3 Cir. 2016). Further, the LUTPA and the FTC Act "prohibit the same types of . . . conduct." *Capitol House Pres. Co., L.L.C. v. Perryman Consultants, Inc.*, 47 So. 3d 408, 417 (La. App. 1 Cir. 2009); *compare* La. Rev. Stat. Ann. § 51:1405(A) (prohibiting "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce"), *with* 15 U.S.C. § 45(a)(1) (prohibiting "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce"). Thus, Louisiana courts would likely find duties imposed by the FTC Act relevant in defining the scope of a defendant's duty as part of a negligence claim in the data breach context. *Manchak v. Willamette Indus., Inc.*, 621 So. 2d 649, 652-53 (La. App. 2 Cir. 1993) (holding that Occupational Safety and Health Administration regulations on workplace safety were relevant in determining scope of

defendant's duty when he alleged that he was injured by unsafe conditions in workplace), cited with approval in *Jones v. Buck Kreihs Marine Repair, L.L.C.*, 122 So. 3d 1181, 1187 (La. App. 4 Cir. 2013).

While the FTC Act itself does not enumerate clear standards, the Court finds that Section 5, in conjunction with federal caselaw and administrative orders and guidance interpreting it,[23] provides specific standards of care for purposes of pleading a duty as part of a negligence claim. *See In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 497 (1st Cir. 2009), as amended on reh'g in part (May 5, 2009) ("Where, as here, a substantial body of FTC complaints and consent decrees focus on a class of conduct, it is hard to see why a court would choose flatly to ignore it.").

---

[23] Plaintiff points to the FTC's guidebook, *Protecting Personal Information: A Guide for Business*, F.T.C. (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf, as an explanation of the standard of conduct imposed under Section 5 of the FTC Act. While not a binding source of law, the guidebook includes such steps as assessing the vulnerability of network connections to reasonably foreseeable attacks, encrypting sensitive information sent to third networks over the internet, using common secured connection protocols such as Transport Layer Security when receiving or transmitting credit card information, using intrusion detection systems, and more. *See Wyndham Worldwide Corp.*, 799 F.3d at 256-57 (referring to *Protecting Personal Information* guidebook and noting that the "FTC's expert views about the characteristics of a 'sound data security plan' could certainly have helped [defendant] determine in advance that its conduct" may have violated Section 5's prohibition on unfair practices).

As to defendant's argument that Section 5 cannot support a negligence claim because there is no private right of action under the statute, the Fifth Circuit has held that the question of whether a federal statute without a private right of action can inform a state common law right of action is a question of state law. *See Audler*, 519 F.3d at 253 (whether the National Flood Insurance Act can support a negligence claim under Louisiana law is a question for Louisiana courts); *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 161 (5th Cir. 1981) (question of state law whether a common law duty may be informed by federal statute with no private cause of action). Louisiana courts have looked to federal statutes that do not confer private rights of action in determining "whether defendants violated their duties and obligations under Louisiana law." *See Claborne v. Hous. Auth. of New Orleans*, 165 So. 3d 268, 286 (La. App. 4 Cir. 2015). Violations of federal law are particularly relevant where the "principal purpose" of the law at issue is "to protect the plaintiff." *Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d at 727. As discussed above, the Louisiana Legislature has declared that the failure to implement reasonable data security measures violates a duty imposed by a Louisiana statute that state courts have expressly recognized is modeled on the FTC Act. Thus, Louisiana courts would be likely to conclude that Section 5 of the FTC Act is an appropriate authority on the scope of a defendant's

duty under Louisiana negligence law in data breach cases, irrespective of the absence of a private right of action under the FTC Act. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2020 WL 6290670, at *10 (D. Md. Oct. 27, 2020) ("Numerous courts have held that Section 5 of the FTC Act was designed to protect the consumer whose data was compromised by the negligent actions of a defendant."); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1176 (N.D. Ga. 2019) ("Section 5 of the FTC Act can provide a statutory duty for a negligence . . . claim, even if the underlying statute does not itself provide a private right of action."). Accordingly, the Court finds that plaintiff's reference to Section 5 of the FTC Act sufficiently supports the duty element of a claim for negligence under Louisiana law.

As to the element of damages, the Court held in its Order and Reasons dated September 28, 2023, that in the context of the LDSBNL, plaintiff has alleged actual damages sufficient to survive the motion to dismiss stage because he "alleges that his PII was 'disclosed' and 'used to his detriment.'"[24] *Cf. Bradix v. Advance Stores Co., Inc.*, 226 So. 3d 523, 529 (La. App. 4 Cir. 2017) (holding that damages element of negligence claim could not be established when plaintiff alleged only "potential identity theft, loss of credit,

---

[24]     R. Doc. 23 at 22-23.

loss of opportunity for credit, denial of credit applications and severe stress and anxiety").  Plaintiff alleges that he has suffered three specific incidents of identity theft,[25] has at least $800 in unreimbursed fraudulent charges,[26] must pay for identity theft prevention services,[27] and suffers various emotional harms.[28]  *Cf. Pinero v. Jackson Hewitt Tax Serv., Inc.*, 594 F. Supp. 2d 710, 717 (E.D. La. 2009) (holding no recoverable damage existed when plaintiff did not allege actual identity fraud).  The Court finds that these allegations are sufficient to state a claim for negligence under Louisiana law at the motion to dismiss stage.  *See Austin v. Abney Mills, Inc.*, 824 So. 2d 1137, 1148 (La. 2002) ("Louisiana is generous in its conception of damages, the slightest being sufficient to support an action." (citing *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1063 n.15 (La. 1992))).

## III.   RULE 12(f)

### A.   Legal Standard

Federal Rule of Civil Procedure 12(f) allows the Court to strike "from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."

---

[25]   R. Doc. 24 ¶¶ 30-32.

[26]   *Id.* ¶ 31.

[27]   *Id.* ¶¶ 33 & 39.

[28]   *Id.* ¶ 35.

A motion to strike under Rule 12(f) "is a drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962); *see also Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) ("[M]otions to strike . . . are generally disfavored."); *Synergy Mgmt., LLC v. Lego Juris A/S*, No. 07-5892, 2008 WL 4758634, at *1 (E.D. La. Oct. 24, 2008) ("Motions to strike made under Rule 12(f) are viewed with disfavor by the federal courts, and are infrequently granted.").

### B.    Plaintiff's LDSBNL Claim

Defendant argues that plaintiff's LDSBNL claim should be stricken because plaintiff knew that the allegations contained within it are false based on correspondence between plaintiff's and defendant's attorneys.[29]   In support of this argument, defendant attaches email correspondence in which defense counsel sends to plaintiff's counsel two letters defendant sent to the Louisiana Attorney General that defendant argues categorically prove that it complied with the requirements of LDSBNL.[30]

---

[29]   R. Doc. 27 at 8-12.
[30]   R. Doc. 27-2 at 4-22.

Rule 12(f) is not an appropriate vehicle for disposing of an entire claim for relief.  *See* Fed. R. Civ. P. 12(f); *see also* Wright & Miller, 5C *Federal Practice and Procedure* § 1380 (3d ed.) ("[A]s the cases make clear, [Rule 12(f)] is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.").  The Fifth Circuit reviews a district court's disposition on a motion to strike under Rule 12(f) for abuse of discretion. *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012).  Conversely, the Fifth Circuit reviews a district court's decision on a motion to dismiss a claim under Rule 12(b)(6) de novo.  *Parker v. LeBlanc*, 73 F.4th 400, 404 (5th Cir. 2023).  This distinction underscores the important difference between Rule 12(b)(6), as a claim-dispositive procedure, and Rule 12(f), as an administrative vehicle for "clean[ing] up the proceedings."  *Coulter v. Deere & Co.*, No. 21-2105, 2022 WL 32212999, at *9 (S.D. Tex. Aug. 9, 2022).  The Court has already ruled on defendant's Rule 12(b)(6) motion on the LDSBNL claim and held that plaintiff stated a plausible claim for relief sufficient to survive the motion to dismiss stage.  Defendant may not now dispose of the claim under Rule 12(f).  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010) ("Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading . . .

18

we would be creating redundancies within the Federal Rules of Civil Procedure.").

Further, the Court could not consider the documents defendant attaches to the Rule 12(f) motion under Rule 12(b)(6), since they are not referred to in the complaint and are not public records of which the Court may take judicial notice. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to h[is] claim."); *Luv n' care, Ltd. v. Jackel Int'l Ltd.*, 502 F. Supp. 3d 1106, 1108 (W.D. La. 2020) (describing the kinds of documents that may be considered as "public records" under Rule 12(b)(6). Considering the documents under Rule 12(f) to determine the legal sufficiency of a claim prior to discovery would undermine the purpose of Rule 12(b)(6). Moreover, that defendant must introduce these letters to advance its argument under Rule 12(f) suggests that plaintiff's claim is not, on its face, "redundant, immaterial, impertinent, or scandalous." *See Spoon v. Bayou Bridge Pipeline, LLC*, 335 F.R.D. 468, 470 (M.D. La. 2020) ("Typically, it is clear on the face of the pleadings whether the challenged matter should be stricken under Rule 12(f).")

Even if the Court considered the letters to the Attorney General, they would not show on their face that plaintiff's LDSBNL claim is fatally defective.  Striking a portion of a pleading is a "drastic remedy" that must be denied "[i]f there is any question of fact or law."  *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993); *see also Augustus*, 306 F.2d at 868 ("A disputed question of fact cannot be decided on motion to strike . . . [A]lso, . . . when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed . . . questions of law."). The letters do not negate plaintiff's contention that he and "much of the [putative c]lass" received notice of the breach on July 22, 2022, nor do they establish as a matter of law that defendant acted "in the most expedient time possible."   La. Rev. Stat. Ann. § 51:3074(E) (permitting "reasonable" extension of time to notify victims upon written application to Louisiana Attorney General explaining reasons for the delay).  The only letter sent within the 60-day period does not "give reasons for the delay" beyond conclusory assertions that the incident was being investigated.[31]  Thus, the Court finds that the LDSBNL claim cannot be stricken under Rule 12(f).

---

[31]   *See* R. Doc. 27-2 at 8-9.

## III.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss Count I and to strike Count II of the amended complaint is DENIED.


New Orleans, Louisiana, this _ 15th _ day of February, 2024.


_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE