UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KEVIN MERRELL                                        CIVIL ACTION

VERSUS                                                    NO. 23-1450

1ST LAKE PROPERTIES, INC.                    SECTION "R" (2)

## ORDER AND REASONS

Plaintiff Kevin Merrell, on behalf of himself and all other similarly situated, moves the Court to preliminarily approve the parties' proposed class action settlement.[1]  The motion is unopposed.  For the reasons stated below, the Court grants the motion.

## I.   BACKGROUND

Defendant 1st Lake Properties, Inc. ("1st Lake") is a developer and property manager in the New Orleans area.[2]  This action arises from an alleged data breach of personally identifiable information ("PII") collected and held by defendant in the course of its business.   Allegedly, the information affected by the breach included names, Social Security numbers

---

[1]      R. Doc. 50.
[2]      R. Doc. 24 ¶ 5.

1

("SSN"), driver's license numbers, financial account numbers, credit card numbers, and debit card numbers.[3]

Plaintiff filed a class action in state court in March 2023 on behalf of all individuals residing in Louisiana whose personal information was held by the defendant and affected by the data breach.[4]  Defendant removed the action to this Court in May 2023.[5]

The parties engaged a mediator for a private mediation in June 2024.[6] The mediation did not result in a settlement, but in the succeeding months, the parties continued to negotiate and reached a settlement agreement.[7]

The settlement class is defined as "[a]ll individuals residing in the United States whose [personally identifiable information] was compromised in the Data Breach discovered by 1st Lake Properties, Inc. in December 2021."[8]  The agreement establishes a settlement fund of $525,000, to be deposited by defendant and administered by a designated settlement administrator.[9]  This fund will be used to reimburse members of the settlement class for unreimbursed economic losses, pro rata cash payments,

---

[3]    *Id.* ¶ 16.
[4]    R. Doc. 1-2.
[5]    R. Doc. 1.
[6]    R. Doc. 50-2 at 2.
[7]    *Id.*
[8]    R. Doc. 50-1 at 6.
[9]    *Id.* at 7.

credit monitoring, notice and administrative expenses, service award payments approved by the Court, and the fee award and expenses awarded by the Court.[10] Any payment must be expressly authorized by the Agreement or approved by the Court.[11]

Under the agreement, the settlement administrator will distribute notice of the agreement to the settlement class within seven days after the entry of the preliminary approval order.[12] The notice will provide all applicable information about the settlement, the ability to object at the final approval hearing, and the process for opting out of the settlement.[13] The settlement administrator will send notice by mail to the settlement class members' last known mailing address and will establish a website to host all relevant documents relating to the case.[14]

Plaintiff now moves the Court for preliminary approval of the parties' proposed class action settlement under Federal Rule of Civil Procedure 23(e). The motion includes granting preliminary approval of the settlement, approving the notice program, appointing a settlement administrator, preliminarily certifying the settlement class for settlement purposes,

---

[10]     *Id.* at 8; *see id.* at 9–12.
[11]     *Id.* at 8.
[12]     *Id.* at 12.
[13]     *Id.* at 12–13.
[14]     *Id.* at 12–13, 7.

appointing a class representative, appointing settlement class counsel, approving the form and content of the notices, and scheduling a final fairness hearing for the final order approving the settlement.[15]  Defendants do not oppose the motion.

The Court considers the motion below.

## II.    APPLICABLE LAW AND DISCUSSION

### A. Settlement Class Certification

The certification requirements of Federal Rule of Civil Procedure 23 generally apply when certification is for settlement purposes.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  To be certified under Rule 23, the class must first satisfy four threshold requirements.  A court may certify a class only if:

1.  the class is so numerous that joinder of all members is impracticable;

2.  there are questions of law or fact common to the class;

3.  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4.  the representative parties will fairly and adequately protect the interests of the class.

---

[15]    R. Doc. 50 at 5–6.

Fed. R. Civ. P. 23(a)(1)–(4).  The party seeking certification bears the burden of establishing these requirements.  *Unger v. Amedisys*, 401 F.3d 316, 320 (5th Cir. 2005) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479–80 (5th Cir. 2001)).  If the prerequisites of Rule 23(a) are met, the proposed class must additionally satisfy one of the three provisions for certification under Rule 23(b).  For certification of a 23(b)(3) damages class, the district court must make a finding that questions of law or fact common to class members predominate over questions affecting only individual members and that a class action is the best way to adjudicate the controversy.  Fed. R. Civ. P. 23(b)(3); *Unger*, 401 F.3d at 320.  The matters pertinent to these findings include:

A. the class members' interests in individually controlling the prosecution or defense of separate actions;

B. the extent and nature of any litigation concerning the controversy already begun by or against class members;

C. the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

D. the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  A district court need not consider "whether the case, if tried, would present intractable management problems, for the

proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)). But the Court's consideration of the other factors in Rule 23 is of "vital importance," because the Court will lack a later opportunity to make adjustments to the class. *Id.* The existence of a settlement class may even "warrant more, not less, caution on the question of certification." *Id.* at 620 n.16.

In addition, a court that certifies a class must also appoint class counsel. Fed. R. Civ. P. 23(g). In appointing class counsel, the court must consider:

   i.   the work counsel has done in identifying or investigating potential claims in the action;

  ii.   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

 iii.   counsel's knowledge of the applicable law; and

  iv.   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

### 1. *Rule 23(a) Requirements*

#### i. *Numerosity*

Rule 23(a)(1) requires that the class be so large that joinder of all members is impracticable. To satisfy the numerosity requirement, "a

plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir.2000) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981)).

Here, the proposed Settlement Class consists of individuals residing in the United States whose PII was compromised in the data breach discovered by 1st Lake Properties, Inc. in December 2021.  Excluded from the class are the judges presiding over this litigation and members of their direct families; the defendant, their subsidiaries, parent companies, successors, predecessors, and any entity in which the defendant or their parents have a controlling interest, and their current or former officers and directors; and settlement class members who submit a valid request for exclusion prior to the opt out deadline.[16]  The Fifth Circuit has found that a class of 100 to 150 members "is within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, counsel estimate that approximately 30,000 individuals were involved in the data breach.[17]  Thus, the Court preliminarily finds that plaintiffs satisfy the numerosity requirement.

---

[16]    R. Doc. 50-1 at 6.

[17]    R. Doc. 50 at 17.

### ii. Commonality

The commonality test of Rule 23(a)(2) requires that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The requirement that class members have all "suffered the same injury" can be satisfied by "an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014). The principal requirement of commonality is that class members raise "at least one contention that is central to the validity of each class member's claims." *Id.* at 810. This "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. "[E]ven a single common question will do." *Id.* at 811 (quoting *Wal-Mart Stores*, 564 U.S. at 359).

Though even a single common question will satisfy the Rule 23(a)(2) commonality requirement, the Rule 23(b)(3) predominance inquiry "is more demanding," *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quoting *Wilborn v. Wells Fargo Bank, N.A.*, 609 F.3d 748,

755 (5th Cir. 2010)). Because "[p]laintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement without satisfying Rule 23(a)'s commonality requirement," the Court combines its commonality analysis with its predominance analysis. *Id.* at 705 n.25 (noting the commonality requirement is "subsumed under, or superseded by, the more stringent Rule 23(b)(3) [predominance] requirement" (quoting *Amchem*, 521 U.S. at 609)); *see* discussion, *infra*.

### iii. Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The test for typicality is not demanding, and it focuses on the general similarity of the legal and remedial theories behind plaintiffs' claims. *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). Thus, "many courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." 7A Wright & Miller, Federal Practice and Procedure § 1764 (2014).

The class representative is the same as the named plaintiff. Here, plaintiff and the settlement class members raise identical claims from the same data breach on 1st Lake's system, which involve the same theory of

damages.  Nothing before the Court indicates that the named plaintiff would be subject to any unique defense that would render him atypical of the class. The Court preliminarily finds the typicality requirement satisfied.

### iv. Adequacy

Rule 23(a) also requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (citing *Falcon*, 457 U.S. at 158, n.13). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625–26 (citations and internal quotation marks omitted).  The adequacy requirement "also factors in competency and conflicts of class counsel." *Id.* at 626 n.20.

Here, as discussed in the Court's analysis of typicality, the interests of the class representative are aligned with the interests of the class, because class members raise identical claims relating to the same alleged conduct and according to the same theory of damages.  Thus, the Court sees no conflict of interest between the class representatives and the settlement class.

In addition, the parties have nominated experienced class action attorneys for class counsel.[18]  Matthew Wilson is a principal in the firm of Meyer Wilson, which has extensive experience in litigating consumer class actions, including data breach class actions.  Matthew Wilson has served as court-appointed class counsel to more than thirty-five certified classes over fifteen years.[19]  Layne Hilton, also with Meyer Wilson, is an attorney who specializes in mass torts litigation.[20] The other proposed class counsel, Raina Borrelli of Strauss Borrelli PLLC, is similarly qualified, as she has served as lead class counsel in numerous national class actions and multidistrict litigations, particularly in data privacy cases.[21]  The Court therefore preliminarily finds that the adequacy requirement is met.

### 2. *Rule 23(b) Requirements*

For class actions seeking money damages, Rule 23(b)(3) imposes two prerequisites, predominance and superiority:  "[Q]uestions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members, and . . . a class action [must be] superior

---

[18]    R. Doc. 50-2 at 5–7, 11–24.
[19]    *Id.* at 20.
[20]    *Id.* at 22.
[21]    *Id.* at 40.

to the other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### i. Predominance

The Court combines its analysis of Rule 23(a) commonality and Rule 23(b) predominance.   While a single common question will satisfy commonality, to satisfy predominance, "common issues must constitute a significant part of the individual cases." *Mullen*, 186 F.3d at 626.  "This requirement, although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding[,]' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Unger*, 401 F.3d at 320 (quoting *Amchem*, 521 U.S. at 623–24).

To make a "meaningful determination" of whether an allegedly common contention satisfies commonality, a district court must "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 841 (5th Cir. 2012) (quoting *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)).  Specifically, a district court should analyze how resolution of an allegedly common question of law or fact will decide an issue central to an element or defense of each of the class members' claims at once. *See id*. at 841–42.  Similarly, to determine whether the class claims meet the

predominance requirement, the court must "identify[] the substantive issues that will control the outcome, assess[] which issues will predominate, and then determin[e] whether the issues are common to the class." *Bell Atl. Corp. v. AT & T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003)).

The predominating questions in this case are whether 1st Lake had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of plaintiff and settlement class members, and whether 1st Lake breached that duty. *See, e.g.*, La. Rev. Stat. §§ 51:3074(A)-(E)[22] (imposing specific duties to (1) "implement and maintain reasonable security procedures . . . appropriate to the nature of the information to protect the personal information from unauthorized access, destruction, use, modification, or disclosure," and (2) "take all reasonable steps to destroy . . . the records . . . containing personal information that is no longer to be retained," among others).  The common questions here—determining defendant's duty and whether it breached that duty—predominate over any individual issues. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (finding

---

[22]    Plaintiff asserts claims of gross negligence and negligence under La. Rev. Stat. § 51:3074, *et seq.*, and violations of La. Rev. Stat. § 51:3074, *et seq.*  R. Doc. 24 at 17–25.

that common questions predominate when the central issue was defendant's "conduct before, during, and following the data breach, and the resulting injury to each class member from that conduct"); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) (finding that common questions predominate when the claim depended on whether defendant "properly secured the stolen personal information"). Classwide resolution of these issues would resolve elements central to the claims of all plaintiffs at once. The Court finds preliminarily that both the predominance element of Rule 23(b) and the commonality element of Rule 23(a) are satisfied.

### ii. Superiority

The Court also finds preliminarily that a class action is superior to other methods of adjudicating this case. As the Supreme Court explained:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (internal citation omitted). As here, when the amount at stake for any individual plaintiff would not make litigating a data breach dispute worth the time, money, or effort, certifying the case as a class

action allows the claims of those impacted to be resolved efficiently at one time.

### 3. Rule 23(g) Requirements

Certifying a settlement class also requires appointing class counsel under Rule 23(g).  Plaintiff nominates Raina Borrelli of Strauss Borrelli and Layne Hilton and Matthew Wilson of Meyer Wilson as class counsel.[23]  For the reasons discussed in the Court's analysis of adequacy, *supra*, and considering the work these attorneys have done in investigating and prosecuting the claims in this case, the Court finds the candidates proposed satisfy the requirements of Rule 23(g) to serve as settlement claims counsel. The Court therefore appoints Raina Borrelli, Layne Hilton, and Matthew Wilson to serve as settlement claims counsel.

## B. Preliminary Fairness Determination

Federal Rule of Civil Procedure 23 governs the settlement of class actions.  *See Henderson v. Eaton*, 2002 WL 31415728, at *2 (E.D. La. 2002) (citing *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176–77 (5th Cir. 1975)). A class action may not be dismissed or compromised without the district court's approval.  *See* Fed. R. Civ. P. 23(e); *see also Cope v. Duggins*, 203

---

[23]    R. Doc. 50-1 at 3.

F.Supp.2d 650, 653 (E.D. La.2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

The Court must "ensure that the settlement is in the interests of the class, does not fairly impinge on the rights and interests of dissenters, and does not merely mantle oppression." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978)). Because the parties' interests are aligned in favor of settlement, the Court must take independent steps to ensure fairness in the absence of adversarial proceedings. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279–80 (7th Cir. 2002) (noting that the class action context "requires district judges to exercise the highest degree of vigilance in scrutinizing proposed settlements"). The Court's duty of vigilance does not, however, authorize it to try the case in the settlement hearings. *Cotton*, 559 F.2d at 1330.

In the preliminary fairness review, the court makes "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." 21.632. Preliminary Fairness Review, Ann. Manual Complex Lit. § 21.632 (4th ed.). If the proposed settlement discloses no reason to doubt its fairness,

16

has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval. *See In re Stock Exchs. Options Trading Antitrust Litig.*, 2005 WL 1635158, at \*5 (S.D. N.Y. 2005); *McNamara v. Bre–X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002).

The Court finds no reason to doubt the fairness of the process by which the parties arrived at a settlement agreement or that the agreement is not reasonable and adequate. The settlement was agreed to after months of investigation, discovery, and arms-length negotiations between experienced attorneys.[24] The case was also litigated before the settlement, as evidenced by defendant's motions to dismiss.[25]

The settlement ensures that class members will be compensated for any damages accrued as a result of the data breach and that they may avoid additional harm with credit monitoring. The settlement fund must be established within thirty days of the effective date, in the amount of $525,000.[26] Members of the settlement class can submit a claim for up to

---

[24]   *See* R. Doc. 50-2 at 2.
[25]   *See* R. Docs. 16 and 27.
[26]   R. Doc. 51-1 at 7.

17

$10,000, as well as two years of credit monitoring.[27]  Additionally, 1st Lake agreed to upgrade its information security system.[28]

The settlement does not appear to give preferential treatment to the class representative or any segment of the class.  While counsel notes that plaintiff will seek a $5,000 award for bringing the claim on behalf of the class,[29] this payment is subject to later approval by the Court,[30] and such awards have sometimes been approved in other cases.  *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) ("Courts 'commonly permit payments to class representatives above those received in settlement by class members generally.'" (quoting *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 870 (E.D. La. 2007)).

Additionally, the release provision of the agreement appears to be reasonable.  Members of the class release defendant from all liabilities that result from the data breach and conduct that could have been or was alleged

---

[27]  *Id.* at 9–10.
[28]  R. Doc. 50-1 at 12.
[29]  R. Doc. 50 at 18.
[30]  R. Doc. 50-1 at 8.

in the litigation.[31]  Released claims do not include any claims against any non-settling defendant.[32]

The amount of the settlement is an all-in figure, to be reduced by notice and settlement administration expenses and attorneys' fees and litigation expenses, at the approval of the Court.[33]  Counsel has indicated that they will seek attorneys' fees and costs up to one-third of the total settlement fund.[34] The Court reserves judgment on final approval of costs and/or fees until presented with a request by class counsel.  For purposes of preliminary approval, however, the Court finds that an award of attorneys' fees and costs of one-third of the settlement fund is in keeping with awards of district courts in this circuit and is not so excessive as to require denial of preliminary approval.  *See, e.g.*, *Burford v. Cargill, Inc.*, 2012 WL 5472118, at * (W.D. La. Nov. 8, 2012) (approving one-third of the monetary settlement); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014) (approving one-third of the settlement and explaining that it is "not unusual for district courts in the Fifth Circuit to award percentages of approximately one third").

---

[31]    *Id.* at 15.
[32]    *Id.* at 6.
[33]    *Id.* at 8.
[34]    R. Doc. 50 at 9.

The agreement also provides that any money remaining in the fund more than 140 days after the distribution of the settlement payments to the settlement class members, or 30 days after all reissued settlement checks are no longer negotiable, whichever occurs later, will be sent to the Electronic Privacy Information Center in Washington D.C., as approved by the Court, as a *cy pres* distribution.[35]  In class actions, federal courts apply the equitable doctrine of *cy pres* to put undistributed or unclaimed settlement funds to their next best compensatory use, "*e.g.*, for the aggregate, indirect, prospective benefit of the class." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) (quoting *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002)).  The Fifth Circuit requires that two conditions be met before finding that a *cy pres* distribution is appropriate.  First, it must be infeasible to make further settlement distributions to class members. *Klier*, 658 F.3d at 475 (citing Am. Law Inst., Principles of the Law of Aggregation Litigation § 3.07 (2010)).  Second, the unclaimed funds must "be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Klier*, 658 F.3d at 474 (quoting *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d at 682).  The Court

---

[35]    R. Doc. 50-1 at 11.

will determine the appropriateness of the *cy pres* distribution at the final approval hearing.  For the purposes of preliminary approval, the Court finds that the *cy pres* distribution appears to be consistent with the purposes of *cy pres* awards and is not facially unreasonable.

Finally, "[t]he settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case." *Cotton*, 559 F.2d at 1330.  In making this comparison, "[p]ractical considerations may be taken into account."  *Id.*  "[P]roof difficulties" are "permissible factors" for a court to contemplate when evaluating the fairness of a settlement.  *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 240 (5th Cir. 1982).  In addition, "particularly in class action suits, there is an overriding public interest in favor of settlement," partly because "[i]t is common knowledge that class action suits have a well-deserved reputation as being most complex."  *Cotton*, 559 F.2d at 1331.

Applying these principles, the Court considers the $525,000 settlement fund in light of the universe of potential damages in this case, balanced against the risks present in this particular litigation.  Counsel acknowledges the risk of trial and notes that there is a potential for no recovery.[36]  Class certification will almost certainly be contested, and counsel

---

[36]     R. Doc. 50-2 at 7.

further asserts that to the best of their knowledge, no data breach consumer class action suit has gone to trial, heightening the risk of further litigation.[37] Thus, in light of the uncharted potential challenges and significant risks of nonrecovery, the Court preliminarily finds that the settlement figure is within the range of what is reasonable.

## C. Notice

### 1. Content

Federal Rule of Civil Procedure 23(c)(3) governs the notice requirements for class certification. Specifically, the notice must state:

i.    the nature of the action;

ii.   the definition of the class certified;

iii.  the class claims, issues, or defenses;

iv.   that a class member may enter an appearance through an attorney if the member so desires;

v.    that the court will exclude from the class any member who requests exclusion;

vi.   the time and manner for requesting exclusion; and

vii.  the binding effect of a class judgment on members under Rule 23(c)(3).

---

[37]    R. Doc. 50 at 15.

Fed. R. Civ. P. 23(c)(3)(B).

The parties have submitted a long form notice[38] and short form notice,[39] and a claim form,[40] for the Court's review.  The Court finds that both notices meet the requirements of Rule 23(c)(3).  The plain language of the notices apprises all class members of the nature of the action, the definition of the class, the class claims and the defenses, the class members' right to be heard, the class members' right to exclusion, the time and manner for requesting exclusion, and the binding effect of a class judgment.  The notices also disclose the amount of the settlement, a statement of attorneys' fees sought, and the reasons for settlement.  The Long Form Notice provides additional detail such as the name and contact information of counsel and the time and manner for requesting exclusion.  Moreover, the notices use clear headings and utilize plain language.

### 2. Method

Under Rule 23(e)(1), when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  In addition, for classes certified under

---

[38]   R. Doc. 50-1 at 30–37.
[39]   *Id.* at 25–27.
[40]   *Id.* at 28

Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified by reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Due Process Clause also gives unnamed class members the right to notice of the settlement of a class action. *Fidel v. Farley*, 534 F.3d 508, 513–14 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005)). The notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeJulius*, 429 F.3d at 944 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Still, "the type of notice to which a member of a class is entitled depends upon the information available to the parties about that person." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977).

Here, the agreement states that within seven days after the entry of the preliminary approval order, defendant will provide to the settlement administrator a list of members, together with residential and email address information. Within thirty days after the order is entered, the administrator will disseminate notice to the settlement class members via U.S. mail, to the

extent mailing addresses are known.[41]   Counsel notes that if the mailing address is not known, then the administrator will send notice at the last known personal email address.[42]  Class counsel may direct the administrator to send reminder notices to class members, which will be sent sixty days after the notice date.[43]   The administrator will also create and maintain a settlement website with the notices, a claim form, deadlines, the settlement agreement, and all court documents related to the settlement.  Because most of the individual contact information is known, the majority of the class will receive individualized notice.

The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process.  The direct mailing or emailing to the class members is reasonably calculated to apprise class members of the settlement and is the best notice practicable under the circumstances.  Therefore, the Court approves the proposed notice forms and the plan of notice.

---

[41]    R. Doc. 50-1 at 12.
[42]    R. Doc. 50 at 10.
[43]    R. Doc. 50-1 at 12.

### D. Claims Administrator

Counsel moves to appoint RG/2 to serve as the settlement administrator.[44]   The settlement administrator will manage notice and adjudicate all claims.[45]   RG/2 has a track record of supporting the administration of hundreds of class actions, and was agreed upon by both parties.[46]   The Court is satisfied that RG/2 is qualified to administer the settlement and approves RG/2 as the settlement administrator.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's unopposed motion for preliminary approval of class settlement.   The Court grants preliminary approval of the settlement agreement, approves the notice program, appoints RG/2 as the settlement administrator, preliminarily certifies the settlement class for settlement purposes only, appoints Kevin Merrell as representative of the class, appoints Raina Borrelli, Layne Hilton, and Matthew Wilson as settlement class counsel, and approves the form and content of the short form notice, the long form notice, and the claim form.   A detailed procedural order will be issued in conjunction with this opinion.

---

[44]   R. Doc. 50 at 22.  The briefing also refers to this interchangeably as the claims administrator.

[45]   R. Doc. 50-2 at 4.

[46]   *Id.* at 3–4.

The Court will hold a final approval hearing on Thursday, November 6, 2025, at 10:30 a.m.

New Orleans, Louisiana, this  22nd  day of May, 2024.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE