**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KEVIN MERRELL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1450** |
| **1ST LAKE PROPERTIES, INC.** | **SECTION: "R"(2)** |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     INCORPORATION BY REFERENCE ............................................................ 1

III.    SUMMARY OF SETTLEMENT ..................................................................... 2

        A.      The Settlement Class.............................................................................. 2

        B.      Settlement Benefits ................................................................................ 2

        C.      Notice, Fees, Costs and Service Awards ............................................... 3

        A.      The Settlement is Fair, Reasonable, and Adequate................................ 7

                1.      Plaintiff and Settlement Class Counsel Provided Excellent Representation. ................................................................................ 7

                2.      The Settlement is the product of serious, informed, arm's-length negotiations. ................................................................................. 8

                3.      The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation. ......................................... 9

                4.      The State of Litigation and the Available Discovery................................. 9

                5.      The Settlement Terms Appropriately Balance the Merits of Plaintiff's Claims and the Likelihood of Success with the Attendant Risks. ............ 10

                6.      Class Counsel and Plaintiff Believe the Settlement is in the Settlement Class's Best Interest.................................................................. 12

                7.      The Effectiveness of the Proposed Method of Distributing Relief to the Class Supports Final Approval. ................................. 12

                8.      The Settlement Treats Class Members Equitably Relative to Each Other. ................................................................................. 12

        B.      The Court Should Finally Certify the Settlement Class......................... 13

        C.      The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process. .................................... 14

VI.     CONCLUSION................................................................................................ 16

# TABLE OF AUTHORITIES

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) ------------------------------------------------------------- 9

*Ayers v. Thompson,*
    358 F.3d 356 (5th Cir. 2004) ------------------------------------------------------------- 9

*Brown v. 4Ever Caring, LLC*,
    2020 U.S. Dist. LEXIS 134782 (M.D. La. July 30, 2020) ------------------------------------- 8

*Burford v. Cargill, Inc.,*
    2012 U.S. Dist. LEXIS 161292 (W.D. La. Nov. 8, 2012*)*------------------------------------- 9

*DeHoyos v. Allstate Corp.,*
    240 F.R.D. 269 (W.D. Tex. 2007) -------------------------------------------------------------11

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
    807 F. App'x 752 (10th Cir.)-------------------------------------------------------------15

*Faircloth v. Certified Fin. Inc.,*
    2001 U.S. Dist. LEXIS 6793 (E.D. La. May 15, 2001)-------------------------------------10

*Gonzalez v. Elna Sefcovic, LLC*,
    141 S. Ct. 851 (2020) -------------------------------------------------------------15

*Grimm v. American Eagle Airlines, Inc.*,
    2014 WL 1274376 (C.D. Cal. Sept. 24, 2014)-------------------------------------------------11

*Hohensee v. Divine Miracles, Inc.*,
    2018 U.S. Dist. LEXIS 193954 (E.D. La. Nov. 14, 2018) -------------------------------- 6, 9

*In re Combustion, Inc.,*
    968 F. Supp. 1116 (W.D. La. 1997) -------------------------------------------------------------10

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. Apr. 1981) -------------------------------------------------------------6, 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013) -------------------------------------------------------------11

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
    2006 U.S. Dist. LEXIS 114738 (E.D. La. Sep. 6, 2006) -------------------------------------10

*In re High Sulfur Content Gasoline Prods. Liab. Litig.,*
    2008 U.S. Dist. LEXIS 133399 (E.D. La. Dec. 10, 2008) -------------------------------------14

*Kemp v. Unum Life Ins. Co. of Am.,*
    2015 U.S. Dist. LEXIS 166164 (E.D. La. Dec. 11, 2015) ------------------------------------12

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) -------------------------------------------------------------------------14

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) -------------------------------------------------------------------------- 8

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) -------------------------------------------------------------------------14

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ---------------------------------------------------------------- 5

*Richard v. Flower Foods, Inc.,*
    222 F. Supp. 3d 516 (W.D. La. 2016)-------------------------------------------------------14

*Stephens v. Take Paws Rescue*,
    2022 U.S. Dist. LEXIS 105697 (E.D. La. June 14, 2022)------------------------------------ 6

*Turner v. Murphy Oil USA, Inc.,*
    472 F. Supp. 2d 830 (E.D. La. 2007)-------------------------------------------------------12

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ---------------------------------------------------------------- 6

## I.    INTRODUCTION

Plaintiff Kevin Merrell, on behalf of himself and all others similarly situated, hereby respectfully requests that the Court grant final approval of the parties' proposed class action settlement in this matter under Federal Rule of Civil Procedure 23.

In March of 2023, Plaintiff filed suit against Defendant 1st Lake Properties, Inc. ("1st Lake"), related to a December 2022 data breach involving 1st Lake's systems that affected the personal identifying information ("PII") of Plaintiff and approximately 29,085 other individuals. After formal mediation and several rounds of informal negotiation between the Parties, the Plaintiff and Defendant 1st Lake reached the Settlement Agreement (the "Settlement" or "S.A.") attached hereto as **Exhibit 1**. The Settlement provides timely and excellent benefits to the Settlement Class. Under the Settlement, 1st Lake funded a $525,000 non-reversionary common fund from which Settlement Class Members are eligible to recover either unreimbursed economic losses, or a pro rata cash payment of approximately $160.00 per Plaintiff.  Settlement Class Members were eligible to receive credit monitoring for two years. In addition, 1st Lake will confirm through attestation that it has implemented additional security related safety measures to take care of its PII.  As detailed herein, the Settlement satisfies the preliminary approval standard since it is fair, reasonable, and adequate.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiff refers this Court to and hereby incorporate Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement filed on February 4, 2025, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith. ECF No. 50.

Plaintiff also incorporates by reference the Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards. ECF Nos. 58, 59.

### III.    SUMMARY OF SETTLEMENT

#### A.    The Settlement Class

The Settlement Class consists of "All individuals residing in the United States whose PII was compromised in the Data Breach discovered by 1st Lake Properties, Inc. in December 2021." S.A. at ¶46. The Personal Information involved in the 1st Lake Data Security Incident includes names, addresses, dates of birth, and Social Security numbers. *Id*.

#### B.    Settlement Benefits

The Settlement's $525,000 non-reversionary common benefit fund provides Settlement Class Members with timely benefits targeted at remediating the specific harms they claim to have suffered as a result of the Incident. The benefits of the Settlement were available to all Settlement Class Members. Settlement Class members were able to make claims, up to $10,000, to recover for unreimbursed economic losses, defined as out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are supported by reasonable third-party documentation ("Unreimbursed Losses").  S.A. ¶ 54. This includes losses suffered as a result of identity theft. *Id.* Settlement Class Members were also eligible to make a claim for a pro rata share of the Net Settlement Fund, less all valid claims for Unreimbursed Losses.  S.A. ¶61(ii).  The amount of the Cash Payments was increased on a pro-rata basis.

In addition to the financial and temporal loss reimbursements and benefits, Plaintiff negotiated for significant additional credit monitoring and identity restoration services for the Settlement Class. All Settlement Class Members were provided the option to sign-up for two years of three-bureau credit monitoring.

### C.    Notice, Fees, Costs and Service Awards

The parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses or Plaintiff's service award until after they agreed on all material terms of relief to the Settlement Class. *See* ECF No. 50-2, Hilton Decl. at 22. 1st Lake will pay the costs of notice to the Settlement Class, costs of Claims Administration, and the costs of dispute resolution from the Settlement Fund. S.A. ¶ 69.  1st Lake will also pay for Plaintiff's attorneys' fees and costs (up to one-third of the total Settlement Fund), notice and settlement administration expenses, and a service award to Plaintiff (up to $5,000) from the Settlement Fund, subject to approval by the Court. *Id.* ¶ 59. Settlement Class Counsel has separately petitioned the Court for such fees, costs and expenses 14 days prior to the objection deadline. ECF No. 58, 59.

The Court approved the proposed notice program when it granted preliminary approval, and the Settlement Administrator, RG/2 Claims Administration LCC ("RG/2"), with the assistance of the parties, effectuated the notice program consistent with the Settlement Agreement and the Preliminary Approval Order. *See* Declaration of Melissa Baldwin ("Baldwin Decl.") at ¶¶ 5-6. RG/2 first received a list electronic file from 1st Lake with the names of 29,098 Settlement Class Members. Baldwin Decl. at 7.  After reviewing the electronic data and deduplicating, RG/2 determined there were 29,085 unique class members. *Id.*  In order to provide the best notice practicable and locate the most recent addresses for Potential Settlement Class Members, RG/2 Claims processed the Class List names and addresses received through the United States Postal Service's ("USPS") National Change of Address database ("NCOA") and updated the data with corrected information. *Id.* at ¶ 8.  On June 20, 2025, RG/2 then mailed a notice directly to these 29,085 class members. *Id. at* ¶¶ 8-9.  After this mailing, the USPS returned 5,241 Postcard Notices as undeliverable. *Id.* at ¶ 10. Of the 5,241 returned Postcard Notices, the USPS provided

3

forwarding addresses for 60 Settlement Class Members and Postcard Notice was expeditiously remailed. *Id.* For the remaining returned Postcard Notices, RG/2 Claims performed extensive skip-trace procedures and was able to locate updated addresses for 4,380 Class Members. *Id*. Therefore, of the 29,085 Settlement Class Members, it is assumed that as of the date of this Declaration, the Notice successfully reached 97.25% of the Settlement Class Members. RG/2 also effectuated notice under CAFA to the Attorney General of the United States and thirty-seven (37) state Attorneys General. *Id.* at ¶ 6.

The Notice instructed Settlement Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. *See* Baldwin Decl. Ex. A. The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on August 20, 2025, and only 1 exclusion requests and no objections have been received to date. Baldwin Decl. at ¶ 15, Ex. D. The claim deadline was September 19, 2025, and approximately 1,882 claims were received, of which 1,863 were timely submitted and 19 were considered late filed. *Id.* at 17. As Settlement Class Members were permitted, under the terms of the settlement, to claim more than one benefit from the Settlement, there are 1,660 approved claims that have selected the Cash Payment, 741 approved claims that have selected Credit Monitoring, and 1 approved claim has selected reimbursement of Economic Losses Expenses and provided valid third-party proof to corroborate those expenses. *Id.* Currently, the Pro Rata Cash Payment is $160.98 per claim. As to the claims which were deficient, RG/2 has

communicated with those 190 Class Members, and anticipates that a small percentage of these

Class Members will cure their deficiencies. *Id.*

Finally, Plaintiff previously moved for an award of attorney's fees of one-third of the

Settlement Fund, or $174,983.50, plus reasonable expenses of $10,410.64, and a service award of

$5,000 to the Class Representative, Mr. Merrell. ECF Nos. 58, 59.

## IV.    LEGAL STANDARD

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which a

class action may not be settled without approval of the Court. The general standard for final

approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair,

reasonable and adequate." To make that determination, Rule 23(e)(2) provides that a court should

consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length; (C) the relief provided for the class
> is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii)
> the effectiveness of any proposed method of distributing relief to the class, including
> the method of processing class-member claims; (iii) the terms of any proposed award
> of attorney's fees, including timing of payment; and (iv) any agreement required to
> be identified under Rule 23(e)(3); and (D) the proposal treats class members
> equitably relative to each other.

Rule 23(e)(2).

These factors are consistent with the common-law criteria that preceded Rule 23. *See Reed*

*v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (laying out six factors for courts to

consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement:

(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and

likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery

completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible

recovery; and (6) the opinions of the class counsel, class representatives, and absent class

members); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

There is a "strong presumption" in favor of finding a settlement fair.  *Stephens v. Take Paws Rescue*, No. 21-1603, 2022 U.S. Dist. LEXIS 105697, at *4 (E.D. La. June 14, 2022). A Court will also consider how much formal discovery and dispositive briefing has been completed, because it "demonstrates that the parties have litigated the case in an adversarial manner" and therefore the settlement is not "collusive but arms' length." *Hohensee v. Divine Miracles, Inc.*, No. 18-1287, 2018 U.S. Dist. LEXIS 193954, at *6 (E.D. La. Nov. 14, 2018).

A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval.  Indeed, the court finds that "the terms themselves are fair, reasonable and adequate, the district court may fairly assume that they were negotiated by competent and adequate counsel; in such cases, whether another team of negotiators might have accomplished a better settlement is a matter equally comprised of conjecture and irrelevance." *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir. Apr. 1981).  Because "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

6

V.    **ARGUMENT**

A.  **The Settlement is Fair, Reasonable, and Adequate**

Under both the Rule 23(e) factors and the Fifth Circuit's *Reed* factors, the Court should

grant Plaintiff's motion seeking final approval of this Settlement, which offers significant and

immediate relief to the 29,085 individuals affected by 1st Lake's Data Breach incident. In fact, the

response of the Settlement Class to the Settlement (only 1 request for exclusion and no objection

out of a class of over 29,085 people who were sent notice by first-class mail) further underscores

that the Settlement is, in fact, fair, reasonable, and adequate. For these reasons, and for the

additional reasons stated below, the Court should finally approve the Settlement.

> 1.    **Plaintiff and Settlement Class Counsel Provided Excellent Representation.**

Plaintiff and Class Counsel certainly satisfy the adequacy of representation factor under

Rule 23(e)(2)(A). Plaintiff has no conflicts of interest with other Settlement Class Members, is not

subject to any unique defenses, and he and his counsel vigorously prosecuted and continue to

vigorously prosecute this case on behalf of the Class. *See generally* ECF Nos. 50-2, 59-2.  Further,

Class Counsel are experienced in the successful litigation and settlement of class action litigation,

including data privacy cases. ECF No. 59-2 at ¶¶36-45. *See also In re Heartland Payment Sys.,*

*Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (S.D. Tex. 2012) (data breach

class settlement finding adequacy satisfied where class counsel had "extensive experience

representing consumers, and other plaintiff classes, in class-action litigation," including

"experience representing consumer classes in similar data-breach cases").

Class Counsel also conducted a thorough investigation of the facts both before and during

the course of this action, including prior to engaging in mediation through discovery, and in

negotiating the Settlement after discovery.  The extensive dispositive briefing and discovery

allowed Class Counsel to have a "a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information." *Brown v. 4Ever Caring, LLC*, No. 19-809-JWD-RLB, 2020 U.S. Dist. LEXIS 134782, at *8 (M.D. La. July 30, 2020). Having completed their investigation and given the risks of no recovery at all, Settlement Class Counsel, together with Plaintiff, settled this matter in a way that not only provides timely and important benefits to the Settlement Class, but also avoids the expense and risk of ongoing litigation.

### 2. The Settlement is the product of serious, informed, arm's-length negotiations.

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). On June 6, 2024, after a period of informal discovery and mutual exchange of information for the purposes of mediation, the Parties engaged Bruce A. Friedman, an experienced mediator, for a private mediation. ECF No. 50-2, Hilton Decl. at ¶10. Throughout their mediation session, the Parties engaged in an extensive evaluation and discussion of the relevant facts and law, and the Parties carefully considered the risk and uncertainties of continued litigation and all other factors bearing on the merits of settlement. *Id.* at ¶ 11.

After the mediation did not result in a settlement, the parties re-opened the case, prepared case management orders, sought guidance from the Court on scheduling expert and fact discovery, class certification briefing, and summary judgment briefing, and exchanged formal discovery requests and responses, all the while continuing their negotiations. *Id.* at ¶ 12. In the following

months, the Parties succeeded in reaching agreement on the principal terms of a settlement. *Id.* at

¶ 13.

This exchange of information prior to settlement discussions and the involvement of a

third-party mediator all weigh in favor of final approval as they demonstrate that negotiations were

all at arms-length and supported by all relevant factual information needed. *See Hohensee v. Divine*

*Miracles, Inc.*, No. 18-1287, 2018 U.S. Dist. LEXIS 193954, at *6 (E.D. La. Nov. 14, 2018)

(Finding that extensive discovery "demonstrates that the parties have litigated the case in an

adversarial manner" and therefore the settlement is not "collusive but arms' length.).

### 3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

There exists "an overriding public interest in favor of settlement, particularly in class

actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am.,*

*Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1331).

Indeed, when the prospect of ongoing litigation threatens to impose high costs of time and money

on the parties, the "reasonableness of approving a mutually-agreeable settlement is strengthened."

*Burford v. Cargill, Inc.,* No. 05-0283, 2012 U.S. Dist. LEXIS 161292, at *14 (W.D. La. Nov. 8,

2012*)*. 1st Lake forced the parties to brief dispositive 12(b)(6) motions twice, and the fight for class

certification and summary judgment would require expensive and time-consuming expert

discovery.

### 4. The State of Litigation and the Available Discovery.

Under the third *Reed* factor, the key issue is whether "the parties and the district court

possess ample information with which to evaluate the merits of the competing positions." *Ayers v.*

*Thompson,* 358 F.3d 356, 369 (5th Cir. 2004). Here, there can be no dispute that the Parties and

the Court possess enough information with which to evaluate the merits of the competing positions.

The Parties briefed Rule 12(b)(6) dispositive motions not once, but twice. Additionally, the Parties had exchange information both in an informal manner prior to engaging a mediator, but also resumed formal discovery after the initial mediation talks were not successful. ECF No. 50-2 at ¶¶ 4-12.

### 5. The Settlement Terms Appropriately Balance the Merits of Plaintiff's Claims and the Likelihood of Success with the Attendant Risks.

When evaluating a proposed class action settlement, "the most important factor is the [fourth *Reed* factor,] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). Courts judge the fairness of a proposed compromise by weighing the "likelihood of [Plaintiff's] success on the merits against the amount and form of settlement" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 2006 U.S. Dist. LEXIS 114738, at *17 (E.D. La. Sep. 6, 2006). At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Faircloth v. Certified Fin. Inc.,* 2001 U.S. Dist. LEXIS 6793, at *14-15 (E.D. La. May 15, 2001) (citing *Reed*, 703 F.2d at 172). This factor favors approval of the settlement when the class's likelihood of success on the merits is not absolute. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages); *In re Combustion, Inc.,* 968 F. Supp. 1116, 1128 (W.D. La. 1997*)* ("On the other hand, Plaintiffs will have very serious legal and evidentiary hurdles to meet in order to get their case to the jury.").

Similarly, the fifth *Reed* factor—the range of possible recovery—concerns "whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of

proceeding through litigation." *DeHoyos v. Allstate Corp.,* 240 F.R.D. 269, 290 (W.D. Tex. 2007)..
Both of these factors likewise weigh in favor of final approval.

As outlined above, this Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Breach. The Settlement is similar to results obtained in other data breach cases, further supporting that this settlement is fair and adequate such that it should be approved. The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex area of the law given the need to show the technicalities of how the breach occurred, how it should be prevented, and precisely what information was impacted. Moreover, the damages methodologies, while theoretically sound in Plaintiff's view, remain unproven in front of a jury. Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Another significant risk faced by Plaintiff here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiff "necessarily risk[ed] losing class action status." *Grimm v. American Eagle Airlines, Inc.*, 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). While Plaintiff disputes any defenses 1st Lake asserts and is confident that class certification, and ultimately a class judgment, is achievable, success is not guaranteed. But through the Settlement, Plaintiff and the Settlement Class gain significant benefits without having to face the risk of recovering no relief at all.

### 6. Class Counsel and Plaintiff Believe the Settlement is in the Settlement Class's Best Interest.

Plaintiff and Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class, which is an important consideration in any class settlement analysis. District courts in the Fifth Circuit often accord great weight to the stated opinion of class counsel. *Kemp v. Unum Life Ins. Co. of Am.,* No. 14-0944, 2015 U.S. Dist. LEXIS 166164, at *20 (E.D. La. Dec. 11, 2015)*; see, also, Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 852 (E.D. La. 2007) ("Class counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit.")*; Newby v. Enron Corp.,* 394 F.3d 296, 309 (5th Cir. 2004) ("[T]he weight the district court attached to the opinions of class counsel . . . was justified in light of their superior sophistication."). Here, Settlement Class Counsel are highly experienced in class action litigation generally, and data breach litigation in particular, and are well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. The assessment of Class Counsel weighs in favor of final approval.

### 7. The Effectiveness of the Proposed Method of Distributing Relief to the Class Supports Final Approval.

Subject to Court approval, eligible claims will be paid either electronically or by written check. Settlement checks and credit monitoring codes will be delivered by the Settlement Administrator to Settlement Class Members after the Effective Date. This is a simple, clean, and effective distribution process.

### 8. The Settlement Treats Class Members Equitably Relative to Each Other.

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provided for a notice plan that is designed to

12

reach as many Class Members as possible and provided Class Members with direct mail notice of the Settlement. It also informed Class Members of their right to object to, or opt out of, the Settlement. All Class Members were eligible to make a claim for the same categories of monetary relief and/or to elect the credit monitoring service. Thus, the Settlement treats Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

### 9. Reaction of Settlement Class Members.

The reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a class of approximately 29,085 individuals, only 1 Class Member requested exclusion and there were no objections. *See* Baldwin Decl. at ¶ 15.   As of the date of this declaration, RG/2 Claims has received 1,882 Claim Forms, of which 1,863 were timely submitted and 19 were considered late filed. As Settlement Class Members were permitted, under the terms of the settlement, to claim more than one benefit from the Settlement, there are 1,660 approved claims that have selected the Cash Payment, 741 approved claims that have selected Credit Monitoring, and 1 approved claim has selected reimbursement of Economic Losses Expenses and provided valid third-party proof to corroborate those expenses. *Id*.

### B. The Court Should Finally Certify the Settlement Class

Settlement classes are routinely certified in consumer data breach cases. There is nothing unique about this case that would counsel otherwise. The Settlement Class, which was preliminarily approved by the Court for settlement, still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class member claims.  Consequently, the Court should finally certify the Settlement Class for settlement purposes. Where nothing has changed relative to the Rule 23(a) and pertinent Rule 23(b) factors since preliminary approval, that decision

should be made final, for the reasons set forth in the Plaintiff's Preliminary Approval Motion and

Supporting Memorandum. *See* ECF No. 50.

### C. The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process.

To satisfy due process, notice to class members must be the best practicable, and

reasonably calculated under the circumstances to apprise interested parties of the pendency of the

action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips*

*Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient

to allow class members "a full and fair opportunity to consider the proposed decree and develop a

response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While

individual notice should be provided where class members can be located and identified through

reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means.

Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice

programs approved by other courts. *See In re High Sulfur Content Gasoline Prods. Liab. Litig.,*

No. 1632, 2008 U.S. Dist. LEXIS 133399, at *43 (E.D. La. Dec. 10, 2008) (approving post-card

notice program to notify class members); *Richard v. Flower Foods, Inc.,* 222 F. Supp. 3d 516, 528

(W.D. La. 2016) (same). The content of the Notice provided adequately informed Settlement Class

Members of the nature of the action, the definition of the class, the claims at issue, the ability of a

class member to object or exclude themselves, and/or enter an appearance through an attorney,

and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). RG/2  mailed notice directly to 29,085 Settlement Class Members. Baldwin Decl. at ¶¶7-10. The Short Notice provided an overview of the settlement terms, the benefits available, the options available to Class Members, and the settlement website and toll-free number where additional settlement information could be obtained. *Id at* ¶¶ 9-14*,*  Baldwin Decl. Exs. B, C. After re-sending undeliverable notices following an advanced address search, RG/2 believes that of the 29,085 Settlement Class Members, the Notice successfully reached 97.25% of the Settlement Class Members. Baldwin Decl. at 10. Notice was also available via a dedicated settlement website. *Id.* at ¶ 17. Additionally, RG/2 effectuated notice under CAFA to the Attorney General of the United States and thirty-seven (37) state Attorneys General. *Id.* at ¶ 6. The delivery success rate of 97% meets and exceeds the 70% threshold necessary to satisfy due process requirements.

In addition to the direct mail notice, RG/2 established a dedicated website for the Settlement where relevant documents were posted for Settlement Class Members to review. *Id.* at

15

¶ 11. Also, RG/2 established a toll-free telephone number where Settlement Class Members could call and obtain additional information regarding the Settlement. *Id.* at ¶ 12.

In sum, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23 and satisfies due process requirements. The Notice Plan provided the best notice practicable and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), certifying the Settlement Class for purposes of judgment on the Settlement, and incorporating its prior Order granting the request for attorneys' fees, expenses, and service awards.

Dated: October 23, 2025                                   Respectfully Submitted,

By:    */s/ Layne C. Hilton*
        Layne C. Hilton
        MEYER WILSON CO., LPA
        900 Camp Street Suite 337
        New Orleans, LA 70130
        Telephone: (614) 255-2697
        lhilton@meyerwilson.com

        */s/ Raina C. Borrelli*
        Raina C. Borrelli (*pro hac vice*)
        STRAUSS BORRELLI PLLC
        One Magnificent Mile
        980 N. Michigan Avenue, Suite 1610
        Chicago, IL, 60611
        Telephone: (872) 263-1100
        raina@straussborrelli.

*Attorneys for Plaintiff and the Settlement Class Counsel*