UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KEVIN MERRELL                                         CIVIL ACTION

VERSUS                                                         NO. 23-1450

1ST LAKE PROPERTIES, INC.                   SECTION "R" (2)

## ORDER AND REASONS

Before the Court is plaintiffs' motion for final approval of settlement[1] and plaintiffs' motion for approval of attorneys' fees, expenses, and service awards.[2] Having considered the motions, the supporting memoranda of law, the settlement, the record, and the arguments made during the final approval hearing, the Court grants plaintiffs' motion for final approval of settlement and grants in part plaintiffs' motion for approval of attorneys' fees, expenses, and service award.

## I.    BACKGROUND

Defendant 1st Lake Properties, Inc. ("1st Lake") is a developer and property manager in the New Orleans area.[3] This action arises from a data breach of personally identifiable information ("PII") 1st Lake collected and

---

[1]    R. Doc. 60.
[2]    R. Doc. 59.
[3]    R. Doc. 24, at ¶ 5.

1

held.  The PII allegedly included names, Social Security numbers, driver's license numbers, financial account numbers, credit card numbers, and debit card numbers.[4]

Plaintiff Kevin Merrell filed a class action in state court in March 2023 on behalf of himself and all individuals residing in Louisiana whose PII defendant held and was affected by the data breach.[5]  Defendant removed the action to this Court in May 2023.[6]

On February 4, 2025, plaintiffs filed the unopposed motion for preliminary approval and to direct notice of the proposed class settlement. On May 22, 2025, the Court preliminarily certified the class for settlement purposes, preliminarily approved the class action settlement, and appointed RG/2 Claims Administration LLC as settlement administrator.[7]  Now, plaintiffs ask the Court to (1) certify the Settlement Class for purposes of entering judgment on the settlement under Federal Rule of Civil Procedure 23(e); (2) finally approve the settlement as fair, reasonable, and adequate; and (3) approve their requests for $174,983.50 in attorneys' fees, $10,410.64

---

[4]   *Id.* at ¶ 16.
[5]   R. Doc. 1-2.
[6]   R. Doc. 1.
[7]   R. Doc. 57.

in expenses, and a $5,000 service award to the settlement class representative, Kevin Merrell.

The settlement requires 1st Lake to pay a non-reversionary amount of $525,000 to reimburse members of the settlement class for unreimbursed economic losses, pro rata cash payments, credit monitoring, notice and administrative expenses, payment of a service award approved by the Court, and attorneys' fees and expenses awarded by the Court.

To receive the settlement's benefits, plaintiff and class members agreed to release 1st Lake from all claims and causes of action asserted or that could have been asserted by any settlement class member arising out of the data breach incident.[8]

In the motion before the Court, plaintiffs state the settlement administrator mailed 29,085 notices on June 20, 2025.[9] After the mailing, the U.S. Postal Service returned 5,241 as undeliverable.[10] The claims administrator was able to locate updated addresses for 4,380 of those class

---

[8]    R. Doc. 50, at 11.
[9]    R. Doc. 60, at 7.
[10]    *Id.*

members.[11]   Notice reached 97.25% of the class.[12]   One class member submitted an opt-out notice.  There were no objections.[13]

The Court considers the motion below.

## II.    CLASS CERTIFICATION

For the reasons stated below, the Court finds it proper to certify, and hereby does certify, for settlement purposes only, a Settlement Class under Federal Rule of Civil Procedure 23(b)(3).  The settlement provides for a Settlement Class defined as follows:

> All individuals residing in the United States whose PII was compromised in the data breach discovered by 1st Lake Properties, Inc. in December 2021.[14]

Excluded from the class are the judges presiding over this litigation and members of their direct families; the defendant, their subsidiaries, parent companies, successors, predecessors, and any entity in which the defendant or their parents have a controlling interest, and their current or former officers and directors; and the one settlement class member who submitted a valid request for exclusion prior to the opt out deadline.[15]

---

[11]    *Id.* at 8.
[12]    *Id.*
[13]    *Id.*
[14]    R. Doc. 57.
[15]    R. Doc. 50-1, at 6.

## A.    Legal Standard

Class certification requires a "rigorous analysis of Rule 23 prerequisites." *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 554 (5th Cir. 2011). A settlement class must meet the requirements for class certification as if the case were to be litigated. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To be certified under Rule 23, the class must first satisfy four threshold requirements. A court may certify a class only if:

1. the class is so numerous that joinder of all members is impracticable;
2. there are questions of law or fact common to the class;
3. the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4. the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). The party seeking certification bears the burden of establishing these requirements. *Unger v. Amedisys*, 401 F.3d 316, 320 (5th Cir. 2005) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479–80 (5th Cir. 2001)). In addition to meeting the threshold requirements under Rule 23(a), the proposed class must also meet one of the three categories specified in Rule 23(b).

## B.    Discussion

### 1. *Rule 23(a) Requirements*

The Rule 23(a) requirements are all met in this case. There are nearly 30,000 settlement class members, and numerosity is not in question. Fed.

5

R. Civ. P. 23(a)(1); *see Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding that class of 100 and 150 satisfies numerosity requirement).

Commonality is likewise satisfied. Fed. R. Civ. P. 23(a)(2). Under *Wal-Mart Stores v. Dukes*, commonality requires that the "common contention . . . is capable of classwide resolution . . . ." 564 U.S. 338, 350 (2011). "What matters . . . is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted). Here, the settlement class members' claims all pertain to common questions of fact as to the alleged data breach. The common factual question in this case is what actions 1st Lake took before, during, and after the data breach to safeguard the class members' personally identifiable information. Class-wide proceedings would answer questions as to how the breach occurred and what data was leaked in the data breach. Those proceedings could also answer questions as to the appropriate standard of care for storing personally identifiable information and whether 1st Lake was in violation of such a standard. Answering the factual and legal questions about 1st Lake's conduct would assist in reaching class-wide resolution. Commonality is satisfied under the *Wal-Mart* standard.

Rule 23(a) requires that the named representative is typical of the class. Whether 1st Lake negligently stored the plaintiffs' data is common throughout the class. The claims of Merrell are the same as the claims he asserts on behalf of the class members—he asserts that 1st Lake negligently stored his data. Moreover, 1st Lake's defenses as to Merrell are the same defenses that apply to all the settlement class members. Because this claim revolves around 1st Lake's conduct, as opposed to the characteristics of a particular class member's claim, the representative plaintiff is typical. Fed. R. Civ. P. 23(a)(3); *see Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 616 (5th Cir. 1983).

The Rule 23 adequacy requirement requires a finding that the class representative, class counsel, and the relationship between the two are adequate to protect the interests of absent class members. *Unger v. Amedisys Inc.,* 401 F.3d 316, 321 (5th Cir. 2005). Counsel must be both competent and zealous in representing class interests. *See, e.g.*, *Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125, 130 (5th Cir. 2005). Finally, the Rule 23 adequacy inquiry seeks to uncover conflicts of interest between the named plaintiffs and the class they seek to represent. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

The dual requirements of class counsel's competence and zeal are satisfied here. The three co-lead class counsel—Raina Borrelli, Layne Hilton, and Matthew Wilson—each have experience representing consumers and other plaintiff classes in class-action litigation, including in similar data-breach cases.[16] Class counsel have been vigorous in representing the class, as demonstrated by their defeat of motions to dismiss and successful negotiation of a settlement with 1st Lake, which initially was reluctant to settle.[17]

Analyzing adequacy of the class representative focuses on whether there are intraclass conflicts between the class representatives and those they seek to represent. *Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d 299, 314. A class representative must "possess the same interest and suffer the same injury as the class members." *Amchem,* 521 U.S. at 625–26 (internal quotation marks omitted). Merrell has the same interests, and asserts the same type of injury, as the members he seeks to represent. Neither 1st Lake nor any objector has raised any fundamental intraclass conflict, and the record discloses none outside of the service award, which the Court discusses in Part D, *supra. See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir.

---

[16]    R. Doc. 59-2, at 8, 11.
[17]    *Id.* at 3.

8

2003) (holding that district courts should scrutinize service awards carefully to ensure they do not undermine the adequacy of class representatives). The Court finds that the size and structure of the requested service award are not such that they undermine the adequacy of Merrell's representation here.

Given the nature of this case, the record as to class counsel, and the absence of intraclass conflicts, the Court finds that class counsel and the class representative are adequate.

In conclusion, the proposed settlement class meets all four of the Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy.

### 2. *Rule 23(b) Requirements*

In addition to meeting the threshold requirements under Rule 23(a), the proposed class must also meet one of the three categories specified in Rule 23(b). Plaintiffs seek to certify the class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action [is] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The predominance inquiry tests whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. To determine if certification under Rule 23(b)(3) is proper,

courts consider (A) the class members' interests in individual control of separate actions; (B) the extent and nature of litigation already begun as to the matter; and (C) the desirability or lack thereof of concentrating the litigation of the claims in the forum.  Fed. R. Civ. P. 23(b)(3)(A)-(C); *see also id.* at 620 (noting that courts need not consider whether the trial would present intractable management problems when confronted with a request for settlement-only class certification).

Here, dispositive issues of law and fact regarding the alleged data breach are common to all class members, and these questions predominate over any individual questions.  The predominating questions in this case are whether 1st Lake had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of plaintiff and settlement class members, and whether 1st Lake breached that duty.  *See, e.g.*, La. Rev. Stat. §§ 51:3074(A)-(E)[18] (imposing specific duties to (1) "implement and maintain reasonable security procedures . . . appropriate to the nature of the information to protect the personal information from unauthorized access, destruction, use, modification, or disclosure," and (2) "take all reasonable steps to destroy . . . the records . . . containing personal information that is

---

[18]    Plaintiff asserted claims of gross negligence and negligence under La. Rev. Stat. § 51:3074, *et seq.*, and violations of La. Rev. Stat. § 51:3074, *et seq.*  R. Doc. 24 at 17–25.

no longer to be retained," among others).  The common questions here—determining defendant's duty and whether it breached that duty—predominate over any individual issues.  *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (finding that common questions predominate when the central issue was defendant's "conduct before, during, and following the data breach, and the resulting injury to each class member from that conduct"); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) (finding that common questions predominate when the claim depended on whether defendant "properly secured the stolen personal information").

Superiority examines whether a class action is a better vehicle for resolving a case.  Here, the individual claims are for small amounts, which would likely preclude individual litigation, as the costs of litigation would exceed the likely recovery.  The Fifth Circuit has found such "negative value suits" to be the "most compelling rationale for finding superiority in a class action."  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). Similarly, the efficiency gained in a class-wide settlement demonstrates that resolving the Settlement Class's claims jointly is superior to a series of

individual lawsuits and promotes judicial economy. The Court finds that superiority is satisfied.

## C.    Class Counsel and Settlement Class Representatives

The Court finds that Matthew Wilson and Layne Hilton of Meyer Wilson and Raina Borrelli of Strauss Borrelli PLLC have sufficient experience in class actions and complex litigation, including data breach litigation, and have fairly and adequately represented the interests of the settlement class members.[19] The Court previously appointed Mr. Wilson, Ms. Hilton, and Ms. Borrelli as interim class counsel and now appoints them as class counsel under Fed. R. Civ. P. 23(g). The Court further concludes that the named plaintiff has fairly and adequately represented the interests of the settlement class members and appoints him as a settlement class representative.

## III.   FINAL APPROVAL

Plaintiffs move for final approval of the proposed settlement. Federal Rule of Civil Procedure 23 governs the settlement of class actions. Fed. R. Civ. P. 23. A class action may not be dismissed or compromised without the district court's approval. *Id.* Because the parties' interests are aligned in favor of a settlement, the Court must take independent steps to ensure

---

[19]    R. Doc. 59-2, at 8-12.

fairness. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

Rule 23(e) outlines five procedures the Court must follow when reviewing a proposed settlement involving a certified class. Fed. R. Civ. P. 23(e). The Court must consider the notice to the class; whether the settlement is fair, reasonable, and adequate after holding a hearing; identify any agreements made in connection with the proposal; provide a new opportunity to be excluded if the class was previously certified; and consider any class-member objections. *Id.* Here, during the fairness hearing, class counsel represented that there are no agreements beyond the settlement agreement at issue, which defense counsel confirmed; the class was not previously certified; and there are no class-member objections. Thus, the two remaining inquiries require the Court to consider the notice to the class and whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)-(2). For the following reasons, the Court approves the settlement.

## A. Rule 23(e)(1): Notice

Notice was reasonable and provided due process under Rule 23(e)(1). The administrator was able to reach more than 97% of the settlement class.[20] The notice described the nature of the claims, issues, and defenses and the

---

[20]   R. Doc. 60, at 8.

impact of a class settlement; the scope of the settlement class; the date and time of the fairness hearing; the maximum fees, costs, and service award; and the rights of the class member to opt out.[21]

In total, 28,224 of the 29,085 class members received direct mail notice.[22] One class member submitted an opt-out notice. There were no objections.[23] By the September 19, 2025 claims deadline, the claims administrator had received 1,660 approved claims for the cash payment, 741 approved claims for credit monitoring, and 1 approved claim for reimbursement of economic losses expenses with valid third-party corroboration.[24]

Based on the facts presented, the Court finds that notice to the settlement was reasonable, thorough, comprehensive, and effective. The Court finds that the notice and its distribution satisfies the requirements of due process under the Constitution and Rule 23(e).

## B. Rule 23(e)(2): Fair, Reasonable, and Adequate

There is a "strong presumption" in favor of finding a settlement fair because the public interest strongly favors the voluntary settlement of class

---

[21]    R. Doc. 60-1, at 27.
[22]    R. Doc. 60, at 8.
[23]    *Id.*
[24]    *Id.*

actions.  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  To determine

whether a settlement is fair, reasonable, and adequate, courts apply the

factors in Rule 23(e)(2), considering whether:

> (A)    the class representatives and class counsel have adequately
>        represented the class
> (B)    the proposal was negotiated at arm's length
> (C)    the relief provided for the class is adequate, taking into account:
>>        i.  the costs, risks, and delay of trial and appeal
>>        ii. the effectiveness of any proposed method of distributing
>>        relief to the class, including the method of processing class-
>>        member claims
>>        iii. the terms of any proposed award of attorney's fees,
>>        including timing of payment; and
>>        iv. any agreement required to be identified under Rule
>>        23(e)(3); and
> (D)    the proposal treats class members equitably relative to each
>        other.
>        Fed. R. Civ. P. 23(e)(2)(A)-(D).

In addition, the Fifth Circuit considers the six factors set out in *Reed v.*

*General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983).  To ensure the

settlement is in the best interest of the class members, the Fifth Circuit

considers:

> (1)    the existence of fraud or collusion behind the settlement;
> (2)    the complexity, expense, and likely duration of the litigation
> (3)    the stage of the proceedings and the amount of discovery
>        completed;
> (4)    the probability of plaintiff's success on the merits;
> (5)    the range of possible recovery; and
> (6)    the opinions of the class counsel, class representatives, and
>        absent class members.
>        *Id.* at 172.

The Court will consider the settlement in light of the 23(e)(2) and *Reed* factors.

### 1. *Adequate Representation*

The Court finds that the settlement class representative and class counsel have adequately represented the settlement class. As discussed *infra* in the consideration of adequacy for the purposes of final class certification, outside of the service award, Plaintiff has no conflicts of interest with other class members and is not subject to any unique defenses. Merrell has the same interests, and asserts the same type of injury, as the members he seeks to represent. Neither 1st Lake nor any objector has raised any fundamental intraclass conflict, and the record discloses none outside of the service award, which the Court discusses in Part D, *supra. See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that district courts should scrutinize service awards carefully to ensure they do not undermine the adequacy of class representatives). The Court finds that the size and structure of the requested service award are not such that they undermine the adequacy of Merrell's representation here. Class counsel likewise adequately represented the class. Counsel investigated the case, engaged in mediation, performed a limited amount of discovery, and negotiated the

settlement.[25]  Therefore, the Court finds that Merrell and class counsel have satisfied the adequacy requirement of Rule 23(e)(2)(A).

### 2. *Arm's Length Negotiation*

The Court finds that the settlement results from adversarial, arm's-length, non-collusive negotiations between the parties.  The parties pursued adversarial litigation, including two motions to dismiss, prior to reaching the settlement and participated in mediation sessions with Bruce A. Friedman acting as mediator.[26]  Counsel exchanged both formal and informal discovery prior to the settlement.[27]  *See In re Heartland Payment Sys. Inc.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.")

### 3. *Equitable Treatment*

The Court further finds that the settlement treats class members equitably relative to each other.  All settlement class members who submitted valid claims were eligible to recover under the settlement: 1,660 approved claims selected the pro rata cash payment; 741 approved claims

---

[25]    R. Doc. 60, at 11.

[26]    *Id.* at 12.

[27]    *Id.* at 7-8.

selected credit monitoring; and 1 approved claim sought reimbursement for economic loss expenses with valid third-party corroboration.

### 4. *Adequacy of Relief under* Reed

The Court evaluates the final Rule 23(e)(2) factor—the adequacy of the relief provided for the class—under the factors set forth in *Reed. See Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).

As to the first *Reed* factor, nothing in the record indicates that the settlement was the result of improper collusion or improper dealings.  In addition, the parties presented evidence of their arm's-length negotiations, which included hiring a neutral mediator.[28]  This factor favors approval of the settlement.

As to the complexity, expense, and likely duration of the litigation, this too favors approval.  In this context, the Court considers whether the settling now avoids the risks and burdens of a potentially protected litigation.  *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).  Here, class counsel stated at the final fairness hearing that the underlying facts would require extensive expert testimony, as both class certification and the trial would require explanations of the cyberattack, data breach, and appropriate protections for collected personally identifiable information.  The defendant would likely

---

[28]     *Id.* at 7.

have sought an immediate appeal of an order certifying a class for trial under Fed. R. Civ. P. 23(f). If the Court of Appeals granted an appeal, the litigation could be delayed for one or two years during the pendency of the appeal. Further, the Court of Appeals may well have decertified the class. If the class certification order stood, the parties would likely still have been a year out from an expert-heavy trial on the merits. Under the circumstances, an early settlement that obviated these delays and the risks of having to litigate makes sense. Accordingly, the second *Reed* factor favors approval of the settlement.

The third *Reed* factor—the stage of the litigation—evaluates whether the parties have sufficient information to evaluate the merits of their positions. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). The parties stated at the fairness hearing that, although they had not taken any depositions, they had participated in sufficient written discovery, both formal and informal, as well as motion practice, and mediation to assess the strengths and weaknesses of their case and their opponent's case. The Court is satisfied that the parties were sufficiently informed to assess the strengths and weaknesses of their positions and to make reasoned evaluation of whether and on what terms to settle. Accordingly, the Court finds that this factor strongly favors approval of the settlement.

19

The fourth *Reed* factor is the probability of success on the merits.  For settlement approval purposes, the probability of success on the merits favors approval when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981).  Should the case proceed, there could be significant obstacles to class-wide judgment in favor of the class on both liability and damages. Plaintiffs allege negligence in the storage of their PII.  Even assuming a duty of care, a factfinder could have determined that 1st Lake exercised reasonable care, given current technology and industry standards.  The settlement avoids such risks and provides immediate benefits to class members, including access to credit monitoring in closer proximity to the date of the data breach.  This factor weighs in favor of final approval.

The focus of the fifth *Reed* factor, the range of possible recovery, is whether the settlement is reasonable.  Courts compare the settlement amount to the relief expected at trial.  *See Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).  Under the settlement, class members can ask for either economic losses or the pro rata cash settlement.  Only one class member has submitted supporting documentation for its economic loss, which amounted to around $600.  That most class members have asked for the pro rata payment in lieu of the economic loss payment reflects the

difficulty the class members would have faced in showing at trial that the breach involved their data and an injury resulting from that breach.[29]  Given this difficulty, the likely recovery could very well have been nothing; the $160 pro rata cash payment favorably compares to the relief expected at trial.

Finally, the Court looks to the opinions of class counsel, the class representative, and absent class members.  *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (finding that in determining whether a settlement is fair, reasonable, and adequate, the "trial court is entitled to rely upon the judgment of experienced counsel for the parties").  Here, class counsel and the lead plaintiff agree to the settlement.  Class counsel are experienced in data breach litigation, and the court finds them well-positioned to evaluate the reasonableness of the settlement.  *See, e.g.*, *Newby v, Enron Corp.*, 394 F.3d 296, 309 (5th Cir. 2004).  The opinions of the absent class members appear to favor the settlement.  Overall, approximately 6% of the absent class members have submitted claims forms to participate in the settlement, which class counsel represented in the final fairness hearing is on par with the response rates in similar settlements.  *See In re Wawa, Inc. Data Security Litigation*, 2024 WL 1557366, at *17 (E.D. Pa. 2024) (noting that a

---

[29]   Indeed, the claims administrator has rejected nearly 200 economic loss claims because of claimants' failure to provide documentation of economic losses.

claims rate of 2.56% "compares favorably to the claims rates in other data breach class actions"); *see also In re Packaged Ice Antitrust Litigation*, 322 F.R.D. 276, 291 (E.D. Mich. 2017) (observing that a high claims rate was an indication of the success of the notice program).  After the class received notice, there were no objections and only one opt-out.  In general, courts consider receipt of no objections to be indicative that the settlement is adequate.  4 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 13:58 (6th ed. 2025).  This factor, too, weighs in favor of final approval.

In addition to the *Reed* factors, Federal Rule 23(e)(2)(C) includes terms of any proposed award of attorneys' fees, including timing of payment as a factor that weighs in determining whether a settlement is fair, reasonable, and adequate.  Here, while the requested fees are above the average range of attorneys' fees in like cases, the request is not so unreasonable as to require disapproval of the settlement. *See, e.g.*, 4 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 13:54 (6th ed. 2025).

For the foregoing reasons, the Court finds after the fairness hearing that the proposed settlement is fair, reasonable, and adequate.  Therefore, the Court finally approves the settlement.

## IV.  Attorneys' Fees, Costs, Expenses, and Service Award

In an unopposed motion, class counsel moves for attorneys' fees of $174,983.50, reimbursement for $10,410.64 in expenses, and approval of a $5,000 service award for named plaintiff Kevin Merrell.

Notice of the requested attorneys' fees, expenses, and service award was provided to settlement class members on the postcard that was sent as notice and on the website.[30]  No settlement class member has objected.  For the reasons below, the Court grants in part the motion for attorneys' fees, expenses, and service award.

### A. Attorneys' Fees

In common fund cases, courts in the Fifth Circuit use either the percentage method in which the court awards fees as a reasonable percentage of the common fund, or the lodestar method, in which the court calculates the fees by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation and then applying an upward or downward multiplier.  *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012).  The factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), inform the analysis under either method.  *Union Asset Mgmt.*, 669 F.3d at 644.

---

[30]    R. Doc. 60-2.

The *Johnson* factors, intended to ensure "a reasonable fee," are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorneys because they accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717, 720.

In this case, the percentage method, cross-checked by the lodestar method, is the appropriate method for scrutinizing the proposed attorneys' fee award. *See, e.g.*, *In re Heartland Payment Sys. Inc.*, 851 F. Supp. 2d 1040, 1073 (S.D. Tex. 2012). The first step in the percentage method requires determining the monetary value conferred to the class by the settlement. *Id.* The court then sets a benchmark percentage that applies to that value. *Id.* The court then applies the *Johnson* factors to determine whether a positive or negative adjustment of the benchmark is warranted. *Id.*

Here, the Court first determines the monetary value conferred to the class. In this case, that is a straightforward determination, as the settlement

24

is for $525,000 and encompasses all relief for the class. This valuation amount includes administrative costs and attorneys' fees, which are viewed as part of the class recovery for the purposes of the percentage method. *See In re Heartland Payment Sys. Inc.*, 851 F. Supp. at 1075.

The next step is to determine an appropriate benchmark. *See, e.g.*, *Gooch v. Life Invs. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) (noting that most common-fund fee percentages ranged from 20% to 30%); *In re Heartland Payment Sys. Inc.*, 851 F. Supp. at 1086 (collecting data privacy class-action settlement cases, noting that the previous data privacy cases had percentage awards of 7.7%, 20%, and 3.7%, and adjusting the benchmark in the case down to 20%). The Fifth Circuit does not have a specific benchmark for common fund cases. *Compare In re Hyundai & Kia Fuel Economy Litigation*, 926 F.3d 539, 570 (9th Cir. 2019) (noting that the Ninth Circuit uses 25% as a benchmark for common-fund cases.). Overall, empirical data shows that percentage awards in class actions generally range from 20% to 30%, with the average near 25%. 5 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 15:83 (6th ed. 2025) (compiling empirical studies). A review of the empirical studies shows that the average recovery in the Fifth Circuit is near 25%. *Id.* In determining the benchmark, the Court considers fee awards in similar cases, which the Court notes is the last of the

*Johnson* factors. Given that the data shows that 25% is the average recovery for class action settlements in the Fifth Circuit, the Court sets the initial benchmark at 25%.

As to the relevant *Johnson* factors, the Court finds that:

(a) *Time and Labor Required:* The Court finds that the amount of time and labor required in this case warrants a decrease of the benchmark percentage. The case was settled well before trial, before intensive discovery began, and after limited motion practice. The Court does not question the number of hour that class counsel spent. The question is whether the 398 hours were reasonable. Even recognizing that the case required initial motion practice and settlement negotiations, the number of attorneys and absence of any evidence of billing judgment support a negative adjustment.

(b) *Novelty and Difficulty of Questions:* The case did not involve novel or factually complex issues. Data breach cases have become commonplace. *See, e.g.*, *In re Wawa, Inc. Data Security Litigation*, 2024 WL 1557366 (E.D. Pa. 2024) (collecting data breach cases). This factor is neutral in adjusting the benchmark.

(c) *Skill Requisite to Perform the Legal Service:* The early stage of the litigation in this case did not require extensive legal skill from class

26

counsel beyond filing the initial complaint and addressing two motions to dismiss.  This case never proceeded to dispositive motions or opposed class-certification motions.  This factor is neutral.

(d)   *Preclusion of other employment:* The Court finds that considering the number of attorneys involved, the straightforward nature of the claims, the absence of intense litigation, and the time the attorneys actually expended, this factor does not merit an increase in the benchmark percentage.

(e)   *Contingency Fee:* Consideration of this factor is designed to reflect the attorneys' expectations when undertaking the case. *Johnson*, 488 F.2d at 718.  Here, counsel took the case on a contingency fee basis.[31]  The Court finds that consideration of this factor justifies an increase in the fee award.  *See* 5 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 15:73 (6th ed. 2025).

(f)   *Time Limitations Imposed by the Client or Circumstances:* The Court finds that there are no facts in this case to suggest this factor, which gives a premium for priority work that delays a lawyer's other work, justifies an adjustment in the benchmark fee.

---

[31]   R. Doc. 59-1, at 12.

(g)   *Amount Involved and Results Obtained:* The Court finds that counsel obtained a favorable settlement for the plaintiff class, with class members who submitted claims, even without proof of loss, receiving cash payments of around $160.  Counsel has achieved a settlement in an efficient manner that minimizes the drain on the parties' and the Court's resources.  Accordingly, the Court finds that the consideration of this factor warrants an increase in the fee award.

(h)   *The "undesirability" of the case*:  There is no shortage of data breach litigation, which shows that the cases are not so undesirable as to be rarely taken up.   *See, e.g.*, *In re Wawa, Inc. Data Security Litigation*, 2024 WL 1557366 (E.D. Pa. 2024) (collecting data breach cases).  The Court finds that consideration of this factor is neutral in determining the fee award.

(i)   *The nature and length of the professional relationship with the client:* There is no evidence of any special or lengthy professional relationship between class counsel and the class members. The relationship did not antedate the litigation, nor will it likely continue beyond the closure of this case. The Court finds that consideration of this factor is neutral.

28

(j)    *Customary Fees for Similar Work in the Community*: In setting the benchmark, the Court has considered the data supporting the reasonableness of the percentage.  In addition, the Court considers the empirical data that suggests a negative correlation between the percentage recovery of attorneys' fees and the size of the settlement. 5 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 15:83 (6th ed. 2025) (compiling empirical studies).  Given that the percentage recovery of fees tends to increase as the size of the settlement decreases, the Court finds that this factor merits an increase in the benchmark in this case.

(k)    *The Experience, Reputation, and Ability of the Attorneys:* The Court is satisfied with the experience and reputation of the attorneys involved in this case.  However, the Court finds that the quality of counsel is already accounted for in the enhancement the Court grants for the quality of the result and that this factor warrants no further enhancement.

In conclusion, three of the *Johnson* factors merit an increase in the benchmark, one of the *Johnson* factors merits a decrease, and the remaining *Johnson* factors are neutral.  The Court finds that these factors, taken together, warrant an increase in the benchmark to 28% of the common fund.

A much stronger showing on the *Johnson* factors would have been necessary to justify the 33% fee requested in this case.

The Court next calculates a lodestar for purposes of checking the percentage fee award. In calculating the lodestar, the Court multiples the reasonable number of hours expended by the reasonable hourly rate for each participating attorney. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The reasonable hourly rates are "calculated according to the prevailing market rates in the relevant community." *McClain v. Lukin Indus. Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).

The Court first considers the number of hours. Class counsel asserts that the two firms worked a total of 398 hours on this case, incurring fees of $225,111.50. The party seeking the fee bears the burden of documenting and supporting the reasonableness of all time expenditures for which compensation is sought. *Hensley*, 461 U.S. at 437. The remedy for failing to exercise "billing judgment" is to exclude hours that were not reasonably expended. *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002). The Court finds that having six partners and four associates bill for this case was unreasonable and unjustified by the evidence in the record.[32] But the Court also considers that half of the listed partners and one of the listed

---

[32]    R. Doc. 62.

associates spent less than five hours on the case. Accordingly, the Court reduces the requested number of hours by 10%.

The Court next turns to consider the reasonable hourly rate. Here, Matthew Wilson seeks an hourly rate of $985, Raina Borelli seeks an hourly rate of $700, and Layne Hilton seeks an hourly rate of $525. The Court may reduce the hourly rate if it determines that the requested rate is not within the prevailing market rates. *Hensley*, 461 U.S. at 431. Counsel did not provide affidavits establishing the reasonable hourly rates in the community.

The figures requested are far beyond what courts in the Circuit regularly award even the most experienced litigators. Raina Borrelli and Layne Hilton both have 14 years of experience and request $700 and $525 per hour, respectively. A significant reduction is necessary to reflect rates awarded to other attorneys with similar experience in this District. *See Grant v. Gusman*, 2023 WL 315937, at *13 (E.D. La. Jan. 19, 2023) (reducing a proposed billing rate of $350 per hour to $275 for an attorney with 11 years of experience); *Jones v. New Orleans Reg'l Physician Hosp. Org.*, 2019 WL 6770029 (E.D. La. Dec. 12, 2019) (reducing rate of attorney with 13 years of experience from $350.00/hour to $300.00/hour); *Shaw v. Alpha Air & Heating, L.L.C.*, 2024 WL 1556861, at *3 (E.D. La. Apr. 10, 2024) (reducing rate of attorney with 13-14 years of experience from $500.00/hour to

$350.00/hour). For the purposes of the lodestar cross-check, the Court reduces the hourly award for Borrelli and Hilton to $350.00 an hour. *See Jones v. New Orleans Reg'l Physician Hosp. Org.*, 2019 WL 6770029 (E.D. La. Dec. 12, 2019) (reducing rate of attorney with 13 years of experience from $350.00/hour to $300.00/hour). The Court reduces the hourly award for all other listed associates to $200.00 an hour.

As to Matthew Wilson's proposed rate, that too exceeds the prevailing market rates. *See Archer W. Contractors, L.L.C. v. McDonnel Grp., L.L.C.,* 2025 WL 2088911, at *4-5 (E.D. La. July 9, 2025), report and recommendation adopted (reducing the requested hourly rate of an attorney with 39 years of experience from $530/hour to $500/hour). Accordingly, for the purposes of calculating the lodestar, the Court reduces the hourly award for Wilson to $500/hour. The Court further reduces the hourly rate for all other listed partners to $350/hour. The Court also notes that the requested hourly rate for paralegals ranges from $225.00/hour to $325.00/hour. The Court reduces the paralegal hourly rate to $125/hour to be commensurate with the prevailing rate in the community. *See Dong Phuong Bakery, Inc.*, 2023 WL 3453885, at *3 (affirming award of $125 per hour for paralegal as within prevailing market rates); *Nelson v. Constant*, No. 17-14581, 2021 WL 76407, at *5 (E.D. La. Jan. 8, 2021) (approving hourly

rate of $95 for investigative paralegal and collecting cases); *MCP Int'l, LLC v. Formula Four Beverages, Inc.*, No. 20-3440, 2021 WL 6102383, at *3 (E.D. La. Nov. 23, 2021) (citations omitted) (finding that that $125/hour is the prevailing hourly rate for a paralegal in this district).

Accounting for the 10% reduction in hours and the reduced billing rates to reflect the prevailing rates in the community, the lodestar calculation comes to $124,886.30. The lodestar is slightly below the figure the Court found appropriate using the benchmark analysis, resulting in a lodestar multiplier of 1.2 for the lodestar cross-check. The multiplier is reasonable when compared to similar cases, which thus suggests that the 28% benchmark is reasonable. *See, e.g., Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 411 (S.D.N.Y. 2019) (finding that the average lodestar multiplier for complex consumer cases is 1.82).

For the above reasons, the Court grants attorneys' fees in the amount of $147,000. The Court finds that 28% is an appropriate percentage given the work involved in this case, and that it appropriately reflects adjustments made for the *Johnson* factors and the lodestar cross-check.

## B. Expenses

Class counsel also requests reimbursement of $10,410.64 in litigation expenses incurred in prosecuting this case. There is no objection to class

counsel's request for reimbursement of litigation costs and expenses. The Court finds that class counsel's expenses incurred were reasonable and were expended in furtherance of the litigation and should be reimbursed. *See, e.g.*, *In re Pool Products Distribution Market Antitrust Litig.*, 2016 WL 235781 (E.D. La. Jan. 20, 2016) (approving reimbursement of expenses to which no class members objected and that were necessary to the litigation of the case). The costs are recoverable so long as they are documented and would otherwise be paid by a fee-paying client. 5 *Newberg on Class Actions* § 16:10 (5th ed.); *see DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 334 (W.D. Tex. 2007) ("The appropriate analysis to apply in determining which expenses are compensable in a class action case is whether such costs are of the variety typically billed by attorneys to clients." (cleaned up and collecting cases)). The costs charged here are for e-discovery, mediation fees, and filing fees, all of which would otherwise be paid by a fee-paying client. The Court therefore approves the request for reimbursement of costs and expenses.

## C. Service Award

Finally, class counsel requests that Kevin Merrell be awarded a service award of $5,000. While courts commonly permit service or incentive awards to class representatives above those received by the class, the incentive awards are not automatically granted. *See In re Heartland*, 851 F. Supp. 2d

at 1089 (citing *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 870 (E.D. La. 2007)).  In the Fifth Circuit, courts look to the actions the plaintiff has taken to protect the interest of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation to determine whether an incentive award is warranted.  *Id.*; *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

"While there does not appear to be any Fifth Circuit precedent identifying 1% of the common fund as a ceiling for service awards, a review of the case law on this issue reflects that where service awards are paid out of a common fund, they tend to be far less than 1% of the common fund." *Lee v. Metrocare Services*, 2015 WL 13729679, at *5 (N.D. Tex. 2015).  Indeed, recent service awards in the Fifth Circuit have averaged around .5%.  *See Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291 (S.D. Miss. 2014) (awarding seven $5,000 service awards in a $4,000,000 settlement (.875%)); *Plunkett v. FirstKey Homes*, 2024 WL 5315330 (N.D. Tex. 2024) (awarding two $15,000 service awards in $5,000,000 settlement (.6%)); *Armstrong v. Kimberly-Clark Corp.*, 2024 WL 1123034 (N.D. Tex. 2024) (awarding twenty-two $2,500 service award in $17,500,000 settlement (.31%)).

The Court finds that, while Merrell materially advanced the litigation, the requested service award of $5,000 is excessive here.  $5,000 is nearly 1% of the common benefit fund, which is almost double the percentage of recent service awards in this district.  Counsel has provided no records to suggest that Merrell expended a significant amount of time pursuing the litigation. While Merrell provided facts and documents and answered questions during the settlement process, he was neither deposed nor underwent preparation to testify at trial.[33]  The Court finds that a service award of $2,500 appropriately recognizes Merrell's role in advancing the litigation and is in line with service awards for plaintiffs who performed similar roles. *See Armstrong*, 2024 WL 1123034 at *7.  Such an award is .48% of the common benefit fund, a percentage the Court finds appropriate given the degree of Merrell's involvement in this case.

## V.   CONCLUSION

For the foregoing reasons, the Court CERTIFIES the class for settlement purposes.  The Court GRANTS the motion for approval of the final settlement.  The Court GRANTS attorneys' fees in the amount of $147,000.

---

[33]   R. Doc. 59-1, at 15-16.

The Court GRANTS fees in the amount of $10,410.64.  The Court GRANTS a service award to Kevin Merrell in the amount of $2,500.


    New Orleans, Louisiana, this 21st day of November, 2025.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE